In the Matter of Joseph Francis LARIO Cathy M. Lario, Debtors.

E. Hanlin BAVELY, Trustee, Plaintiff,

v.

MERCHANTS NATIONAL BANK, et al., Defendants.

Bankruptcy No. 1–83–00053.
Adv. No. 1–83–0396.

United States Bankruptcy Court, S.D. Ohio, W.D.

Nov. 30, 1983.

E. Hanlin Bavely, Cincinnati, Ohio, for plaintiff.

Joanne M. Schreiner, Cincinnati, Ohio, for defendants.

## ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

This adversary proceeding is before the Court pursuant to a complaint filed by the trustee of this Chapter 7 case to avoid a preferential transfer under 11 U.S.C. § 547. The matter was heard on August 29, 1983. The only testimony presented was that of the debtor, Joseph Lario. Defendant, Developers Diversified, Ltd. ("Developers") did not appear at the trial, having previously indicated that its sole defense to the trustee's preferential claim rested upon the exception set forth in § 547(c)(1).

The essential facts are undisputed, and may be summarized as follows: On October 7, 1981, Joseph Lario entered into a five-year lease with Developers for premises located in a shopping center in Hillsboro, Ohio. Thereafter, Lario opened a restaurant at that location known as Lario's Italian Restaurant.

The lease agreement provided for minimum monthly rental payments of $1000 plus a percentage of yearly gross sales in excess of $200,000. The rent was later decreased to $633 per month. The lease further provided that Lario could not sublet the premises or assign the lease without the approval of Developers. *See,* Exhibit A attached to Document No. 17, Adversary No. 1–83–0396.

The restaurant opened in December of 1981, and thereafter experienced losses in each month of its operation. Lario failed to make his lease payments for the month of June, 1982, and remained in default for each month through November, 1982. Under paragraph 15 of the lease, as of June 11, 1982, Developers had the right to enter the premises, and either relet them or simply terminate the lease. It chose not to exercise either option and allowed Lario to remain in possession until November.

In October of 1982 Lario agreed to sell the restaurant to Joe and Becky Gall. Developers agreed to permit an assignment of the lease to the Galls on the condition that $3225.43 be paid in back rent from the proceeds of the sale. All parties agreed to this condition, and on November 18, 1982, the sale was consummated. As Plaintiff's Ex. 1 illustrates, all of the proceeds from the sale were used to pay off eight of Lario's business creditors in full, including Developers. Developers, Lario, and the Galls subsequently entered into an assignment agreement on December 12, 1982.

Lario's bankruptcy petition was filed on January 11, 1983. From the schedules and statement of affairs, it is apparent that Developers received more from the sale of the business than it would have received under the provisions of the Code. It is equally apparent that the payment of all back rent was to or for Developers' benefit; that it was for an antecedent debt; and that it occurred within 90 days before filing of the bankruptcy and is thus subject to the presumption of insolvency set forth in § 547(f).

Since the trustee has met his burden of proof as to each of the elements of a preference set forth in § 547(b), the burden shifts to the creditor to establish by a pre-

ponderance of the evidence each of the elements of the exception upon which it relies. *In re Saco Local Development Corp.*, 25 B.R. 876, 879 (Bkrtcy.D.Me.1982). Under § 547(c)(1) Developers must show: 1) that the transfer was "intended by the debtor and the creditor... to be a contemporaneous exchange for new value given to the debtor" and, 2) that the transfer was "in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1). Section 547(a)(2) defines "new value" as:

> ... money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred that is neither void nor voidable by the debtor or the trustee under any applicable law, but does not include an obligation substituted for an existing obligation.

The legislative history of this definition is sparse, but it appears that the concept of "new value" in the Code has its roots in the Uniform Trust Receipt Act ("UTRA"), a predecessor of Article 9 of the Uniform Commercial Code. House Report No. 95–595, 95th Cong., 1st Sess. 217, U.S.Code Cong. & Admin.News 1978, p. 5787 ("Report of the Committee on Coordination of the Bankruptcy Act and the Uniform Commercial Code"). Section 1 of the UTRA makes a clear distinction between "value" which encompasses antecedent indebtedness, and "new value", which does not. Uniform Trust Receipts Act § 1, 9C U.L.A. 232–233 (1957); *see also* Weinberg & Borowitz, "The Ohio Uniform Trust Receipts Act," 19 Ohio St.L.J. 680, 688–689 (1958).

Developers contends that its forbearance from exercising its rights under the lease constituted "new value" to the debtor, since such forbearance increased the value of Lario's restaurant and enabled the sale to be consummated. We do not agree.

First, Developers gave nothing "new" to the debtor. Developers' right to evict or not to evict upon default by Lario was a part of the bargain struck when the lease was executed. By forbearing from evicting Lario, Developers was merely exercising a pre-existing right, not giving "new value".

In exchange, the debtor's obligation to pay rent in a timely fashion was substituted with an obligation to pay an antecedent debt. This substitution of one obligation for another is specifically excluded from the definition of "new value" under § 547(a)(2). *In re Duffy*, 3 B.R. 263 (Bkrtcy.S.D.N.Y. 1980).

Second, Developers' forbearance could hardly be termed "contemporaneous" with the payment of back rent which it received in November, 1982. Indeed, its forbearance began in June of 1982 when Developers first had the option of exercising its rights under the default provisions of the lease.

Third, we find Developers' contention that its forbearance added value to the estate to be thoroughly speculative. No evidence was presented which would indicate that Lario could not have sold the business without Developers' consent to an assignment of the lease. For all we know, the business could have been purchased and moved to a new and better location.

Furthermore, it is possible that Lario's estate might have suffered a smaller loss if the lease had been cancelled in June, rather than allowing six months back rent to accrue. Again, the evidence is silent on this point.

Finally, no evidence was presented to suggest that the value of the lease exceeded the amount of rent in arrears. *Cf. Bachner v. Robinson*, 107 F.2d 513, 514 (2d Cir.1939).

The evidence before the Court strongly suggests that the sale of the business was structured solely to effectuate a preference to certain of Lario's creditors and to the exclusion of others. The fact that Lario himself realized nothing from the sale is persuasive evidence on this point. It is precisely this sort of transaction which § 547 was intended to avoid.

For the above stated reasons, the Court finds that the trustee has met his burden of proof under § 547(b), and that Developers has failed to establish that the preferential transfer falls within the exception set forth in § 547(c)(1). Accordingly, judgment is

hereby rendered in favor of the plaintiff in the amount of $3225.43.

The foregoing shall constitute this Court's findings of fact, opinion and conclusions of law.

IT IS SO ORDERED.