In re DICK HENLEY, INC. (E.I. #72–0738840), Debtor.

Erwin A. LAROSE, Trustee, Plaintiff,

v.

BOURG INSURANCE AGENCY, Defendant.

Bankruptcy No. 81–00430.
Adv. No. 83–0180.

United States Bankruptcy Court, M.D. Louisiana.

Jan. 14, 1985.

---

10. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, 6 C.B.C.2d 785 (1982).

Erwin A. LaRose, Baton Rouge, La., Trustee.

R. Patrick Vance and Carl D. Rosenblum, New Orleans, La., for defendant.

## REASONS FOR JUDGMENT

WESLEY W. STEEN, Bankruptcy, Judge.

### I. Jurisdiction of the Court

This is a proceeding arising under Title 11 U.S.C. The United States District Court for the Middle District of Louisiana has jurisdiction pursuant to 28 U.S.C. § 1334(b). By order dated August 2, 1984, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(F); pursuant to 28 U.S.C. § 157(b)(1), the Bankruptcy Judge for this district may hear and determine all core proceedings arising in a case under Title 11 referred under 28 U.S.C. § 157(a), and the Bankruptcy Judge may enter appropriate orders and judgments.

No party has objected to the exercise of jurisdiction by the Bankruptcy Judge. No party has filed a motion for discretionary abstention, nor has any party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

### II. Findings of Fact

A. This bankruptcy proceeding was filed on September 22, 1981. The case was originally filed as a Chapter 11 reorganization and was subsequently converted to a Chapter 7 liquidation. The Debtor is Dick Henley, Inc.

B. The bankruptcy schedules, in answer to question number 21, indicate that Richard E. Henley is the only officer, director, and more than 20% shareholder of the corporation. Exhibits introduced in connec-

tion with the motions for summary judgment indicate that only fifty shares of stock were ever issued in the corporation. So far as the Court can tell, Dick Henley is the only shareholder of the corporation.

C. On November 1, 1980, Bourg Insurance agency ("Defendant"), as agent for Travelers Insurance Company and some of its affiliates, issued binder number 07506 in favor of Dick Henley, Inc., ("Debtor") providing workmen's compensation, automobile, general liability, inland marine, and property insurance. The insurance binder was for a one year period beginning September 4, 1980, and continuing through September 3, 1981. The total premium was $219,168.

D. On July 15, 1981, the Travelers Insurance Companies issued a notice of cancellation of these policies; the cancellation was effective as of August 1, 1981. The evidence is not clear on this point, but it appears that the Debtor was paying premiums under these policies monthly. It is clear that the Debtor was in arrears in the amount of $91,320 in the payment of premiums as of July 15, 1981. This sum was for insurance coverage for the months of March through July, 1981.

E. On July 31, 1981, Bossier Bank lent to Dick Henley, individually, the sum of $500,000. The money was deposited (through various wire transfers) in Henley's individual bank account at the Bank of Gonzales.

F. On July 31, 1981, the Debtor issued check $20,000 for $91,320 in payment of the premiums due the Travelers Insurance Companies. This check was apparently delivered to Bourg Insurance Agency, payable to Bourg. At the time that the check was issued by the Debtor, there were insufficient funds in the account for payment; in fact, on July 31, the date that the check

was issued, the Debtor's account was overdrawn by more than $13,000.

G. On August 3, 1981, $400,189.92 was transferred from Dick Henley's individual account to the Debtor's account at the Bank of Gonzales. The stipulated facts include this statement: "No note, contract, agreement, or other formal instrument evidences any consideration or value given by the debtor ..." for these funds.

H. The stipulated facts also recite that "The issuance of the check to Bourg was intended to coincide with the deposit of $400,189.92 into the Debtor's account."

I. The issuance of the check (July 31, 1981), the transfer to the Debtor's account of sufficient funds to pay the check (August 3, 1981), and the payment of the check (August 5, 1981) were all within 90 days of the Debtor's filing in bankruptcy.

J. The trustee filed this adversary complaint on May 5, 1983, alleging that the $91,320 paid to Bourg Insurance Agency was a preferential transfer.

K. The bankruptcy schedules list no property that the Debtor held for any other person.

■ L. Financial statements as of August 31, 1981, were attached by Defendant's counsel to its motion for summary judgment. Those financial statements are not audited; they appear to be statements prepared by a consultant to the Debtor in connection with an attempt to arrange financing and to confect a workable plan of reorganization. Those financial statements show the following items:

1. Based on the completed contract method of accounting (which is apparently the method used by the Debtor for financial and income tax purposes), the Debtor was apparently insolvent to the extent of $1.8 million.[1]

1. The Defendant has argued at some length that the trustee has not met his burden of proof to show that the Debtor was insolvent at the time that the transfers were made. The Defendant refers to the financial statements attached to its motion for summary judgment and concludes that the Debtor's assets and liabilities were both

equal to the sum of $2,176,069.45. This is the only proof introduced with respect to the solvency issue, and Defendant asserts from these statements and from the absence of any other proof that there is no demonstration that the Debtor was insolvent on or about the end of July, 1981. The Defendant has simply mis-read

2. The financial statements show a loss of approximately $736,000 for the year ended August 31, 1981, even after an "allocated overhead" figure of $283,000; no explanation is given for this figure; one would assume that the Debtor created a "negative expense" account by allocating some overhead to Dick Henley or to related entities also owned by him.

### III. Conclusions of Law

This is an action to recover an alleged preferential transfer. Section 547 of the Bankruptcy Code provides (as applicable to this case) that:

"... the trustee may avoid any transfer of an interest of the debtor in property ... to a creditor ... on account of an antecedent debt owed by the debtor before such transfer was made ... while the debtor was insolvent ... within 90 days before the date of the filing of the petition ... that enables such creditor to receive more than such creditor would receive if this case were a case under Chapter 7 ... [and] the transfer had not been made ..."

The statute both establishes the elements of a preferential transfer and enumerates circumstances under which erstwhile preferential transfers are not recoverable by the trustee.

There is no dispute in this case that several of the elements of a preferential transfer are met. There was a transfer of property to a creditor during a period when the debtor was insolvent within 90 days of the filing in bankruptcy. The transfer was such as to enable the creditor to receive more than the creditor would have received if distribution were made pursuant to Chapter 7.[2]

The Defendant asserts that three elements of a preferential transfer were not present in this case: (i) that the funds transferred to the Defendant were not property of the Debtor; (ii) that the Debtor was not insolvent on the date of the transfer;[3] and (iii) that the transfer was not on account of an antecedent debt because it was a payment made to cure a default under an executory contract rather than a payment on an antecedent debt.[4]

■ The Defendant's first allegation is that the payment was not a preferential transfer because the funds paid to the Defendant did not constitute property of the estate. Bossier Bank made a loan to Dick Henley; the funds were transferred to Dick Henley's bank account at the Bank of Gonzales. At the direction of Dick Henley, the funds were then transferred to the Debtor's account at the Bank of Gonzales; the Debtor is a corporation 100% owned by Henley. The Debtor used the funds in its bank account to make a payment to the Defendant. The Defendant's argument is that these funds did not constitute property of the estate because the Debtor did not issue any note, contract, security, or other instrument as consideration for receipt of

---

the financial statements. The financial statements show that the liabilities as of August 31, 1981, were $3,936,298.19 and that the owner's equity was a *negative* $1,760,228.74, giving a total owner's equity and liabilities of $2,176,069.45. The financial statements have also been restated *pro forma* to show the financial position of the company if it were to use the percentage completion method of accounting as opposed to the completed contract method. Even if the percentage completion method were used, the Debtor's assets would still be approximately $883,000 less than its debts. Thus, whichever method of accounting is used, the Debtor is insolvent according to the exhibits presented by Defendant's counsel, and, therefore, Defendant's argument with respect to insolvency has no merit.

2. It appears from the evidence submitted by stipulation that these elements of a preferential transfer were present; the Defendant has not argued that these elements were not present.

3. Because of the statutory presumption of insolvency, and for reasons assigned in footnote 1, this defense has no merit.

4. It is not completely clear from Defendant's memoranda of authorities whether the argument with respect to classification of this insurance policy as an executory contract goes to the issue of "antecedent debt" or whether it goes to the issue of "new value" as an exception to the preferential transfer recoverability. The Court will discuss both issues together.

the funds. The Defendant's memorandum of authorities states:

"Since no consideration was paid, [the debtor] cannot be said to have had any contract rights in these funds. Consequently, it possessed no legal or equitable interests in said funds."

The Defendant's argument is not well taken. It is not necessary that a borrower execute a note or other document to borrow funds. It is not necessary for a corporation to issue additional stock certificates to its 100% stockholder in order for the stockholder to make a capital contribution to the corporation. The Defendant has produced no evidence of any legal restriction on the disposition of these funds. When Dick Henley transferred approximately $400,000 into the Debtor's bank account, those funds became property of the Debtor since the Debtor had legally unrestricted rights to use the funds as it saw fit.

■ The Defendant alleges that there was an "understanding" between Dick Henley and his corporation that $92,000 would be used to pay the Defendant; the Defendant argues that this was a dedication of the funds and that because of this dedication of the funds, the Debtor had no legal right to dispose of the funds otherwise; consequently, argues the Defendant, the Debtor acquired no legal or equitable interest in the funds.

The Defendant has simply failed in his burden of proof since he has submitted no evidence except for Dick Henley's testimony that it was his objective in transferring funds to the Debtor's bank account that the funds be used to pay various debts. There was no written agreement to this effect nor has there been introduced any evidence of the proposed disposition of the funds in excess of the $92,000 paid to the Defendant. From the bank account records introduced by the Defendant, it appears that approximately $320,000 was

disbursed by the Debtor for the purpose of paying bills in the thirty days following the receipt of those funds by the corporation. There has been no evidence introduced to show the restriction on any of those funds other than a general "understanding" of the proposed use of the funds between the stockholder and his corporation.

The Defendant has offered no legal analysis of the relationships created by transfer of these funds to the Debtor if the Debtor indeed obtained no legal or equitable interest in the funds. Does the Defendant suggest that the Debtor became a trustee for funds belonging to Dick Henley? [5] Would the Defendant argue that this created some sort of escrow account held by the Debtor for the benefit of the Defendant? If these funds did not become property of the Debtor, then whose property were they? If they were Dick Henley's individual funds, how did the Debtor legally use the funds to pay the Debtor's debts? If there was an understanding that the funds be used to pay debts owed by the Debtor, then what rights did Dick Henley retain in the funds?

■ The proper analysis of this transaction appears to the Court to be quite simple. When a stockholder transfers money into his corporation's bank account, absent evidence of another contractual relationship, this Court concludes that the stockholder has either lent money to his corporation or else the stockholder has contributed capital to his corporation. In either case, the funds transferred to the corporation's bank account become property of the corporation, and the stockholder obtains correlative rights either as a creditor or as a stockholder.[6]

The Defendant emphasizes that the Debtor's schedules do not list Dick Henley as a creditor and that Dick Henley did not file a proof of claim. From this the Defendant argues that no loan relationship

---

**5.** Louisiana law requires a written act duly acknowledged or an authentic act to create a trust: La.R.S. 9:1752.

**6.** In accounting terms, the transfer of cash to the corporation's bank account would be recognized as a debit to the cash account and a corresponding credit either to a corporate payable or to a corporate equity account.

was established and that, consequently, the cash did not become property of the estate. Again, the Defendant's point is not well taken. The Defendant has not ruled out the classification of the transfer as a contribution to the capital of the corporation. Nor has the Defendant ruled out the possibility that Dick Henley is an unlisted creditor of the corporation who simply did not file a proof of claim.

The evidence, taken as a whole, leads the Court to believe that the Debtor was in hopeless financial difficulty in the month of July, 1981, and that its owner was desperately attempting to keep it afloat. In doing so, the owner transferred more than $400,000 to his corporation with little thought to the legal consequences of that transfer. In the Court's experience, owners of small businesses frequently transfer funds to their wholly owned corporations; these transfers are normally credited to "due to/from" accounts that are classified as liabilities of the business. The Internal Revenue Service frequently asserts that the transfers to the corporation are capital contributions, and that the distributions to the owner are dividends. This Court believes that once money is transferred into the Debtor's checking account, those funds become property of the Debtor unless a party asserting the contrary can supply convincing evidence that the funds were held in some fiduciary or representative capacity. No such suggestion has been made in this case, nor has any such evidence been presented. The Court concludes, therefore, that the funds used to pay the Defendant constituted property of the Debtor.

The Defendant's third argument is that the payment was made to cure a default in an executory contract and that the renewal of the contract and rescission of the termination of the contract were new consideration (new value) for the payment. It is unclear from the Defendant's memorandum whether this allegation is an assertion that the contract was an executory contract and, consequently, that the payment was not on account of an antecedent debt; if this is the allegation, then the Defendant is asserting that the transfer is not within the statutory definition of a preferential transfer. It may be, however, that the Defendant is asserting that the curing of the default in the alleged executory contract, the rescission of the termination of the contract, and the subsequent renewal of the contract constituted "new value"; if this is the case, then the Defendant is asserting that the new value exception to the preferential transfer rule is applicable; that is, even though the payment is a preferential transfer, one of the exceptions is met, and, consequently, the payment is not recoverable by the trustee.[7]

First the Court must deal with the Defendant's allegation that the insurance contract was an executory contract. Everyone who writes about executory contracts feels compelled to explain at great length that there is no statutory definition of an executory contract and that there is no accepted definition of an executory contract; many then refer to Professor Countryman's definition as the best definition available until something better comes along. The Court does not think that the executory contract analysis is necessary for resolution of this case.

---

7.  There are four exceptions listed in Section 547 to recoverability of payments as preferential transfers. "Curing a default in an executory contract" is not one of those exceptions. Therefore, to the extent that the Defendant asserts that curing a default in an executory contract is an exception to recoverability of a preferential transfer, the Defendant must be asserting that the curing of a default in an executory contract is either new value or else is a contemporaneous exchange. These points will be discussed together since all three relate to the Defendant's argument concerning classification of the contract as an executory contract. The three points are: (i) that the contract was an executory contract and therefore, the payment was not on account of an antecedent debt; (ii) that the curing of the default in the alleged executory contract and the renewal of the executory contract and the rescission of the termination of that contract constituted new value; and (iii) that the curing of the default and rescission of termination of the contract constituted a contemporaneous exchange.

The proper analysis of this case is much more simple than that. The insurance company agreed, on its part, to reimburse the Debtor for certain losses that it might incur between September 4, 1980, and September 3, 1981, and to assume the Debtor's liability in case of legal fault for damages to others under certain circumstances during that period. The Debtor, for its part, agreed to pay a stipulated sum of money to the insurance company. The sum was set out in advance, subject to revision upon audit of certain business operational factors, and was payable monthly. The insurance company, for its part, performed its obligations under the contract. It was paid for its performance for the months of September 4, 1980, through February 28, 1981. The insurance company was not paid for its performance for the months of March, 1981, through July, 1981. On account of the Debtor's failure, the insurance company noticed cancellation of the policy effective August 1, 1981.

If this were an executory contract case, the analysis would ask whether the Debtor's failure to perform was sufficient to excuse the insurance company from performing for the months for which it was not paid; the Defendant might assert that payment created new value in eliminating the excuse not to perform for that past period. The insurance company has never asserted that it was not required to perform, and the insurance company has never attempted to avoid performance of its obligation for the period for which it was not paid. On the contrary, the insurance company recognized its obligation to perform and asserted a claim against the Debtor for the funds due for that performance.

■ The analysis of executory contracts is simply not cogent here. If the reinstatement of the policy is an exception to § 547, then the exception must stand on its merits as new value or as a contemporaneous exchange. There is no separate exception in § 547 to recoverability of preferential transfers on account of the use of the funds to effect a pre-petition cure of a default in an executory contract.

■ Section 547(c)(1) provides that the trustee may not avoid an otherwise preferential transfer if the transfer was intended, and was in fact, a contemporaneous exchange for new value. The Court cannot conceive in this case what new value the Debtor obtained by making the payment. The payment was on account of performance by the insurance company relating to a period of time already elapsed. The insurance company's obligation to indemnify the Debtor for losses and liabilities through the end of July, 1981, was recognized regardless of the payment being made; thus, the reinstatement of the policy appears to have had no value to the Debtor beyond the value already received. The insurance company is simply an unsecured creditor of the Debtor; it refused to do further business with the Debtor unless the account was brought current; bringing an account current in such circumstances and thereby obtaining the right to do further business is not a contemporaneous exchange.

It is, however, the type of situation that was apparently intended to be covered by § 547(c)(4). To the extent that the Debtor received new credit from the insurance company subsequent to the $92,000 payment, that new credit constitutes new value and the $92,000 payment is not recoverable to the extent of that new value.

The facts that were stipulated are insufficient for the Court to determine how much that new value might be. From the facts of the case, it appears that the Defendant provided insurance coverage from August 5, 1981 (the date on which the payment was made) until September 22, 1981, the date on which the bankruptcy proceeding was filed.[8] If, and to the extent that, the insurance company advanced new credit subsequent to the payment, the "new value" exception is met.

8. Any coverage subsequent to the date of filing would be a priority claim in the bankruptcy proceeding.

As stated above, it appears that the contract called for the Debtor to make monthly payments of one-twelfth of the annual insurance premium. The stipulated facts do not state *when* each monthly payment was due. Section 547(c)(2) provides that an otherwise preferential transfer is not recoverable if it was made within 45 days of the due date of the debt in the ordinary course of business or financial affairs of the Debtor and transferee according to ordinary business terms. Assuming for the moment that payments were due on the first of the month, a payment on August 5 would be within 45 days of the payment due on July 1, and would be within 45 days of the payment due for the month of August.[9]

In summary, then, the Court determines that the trustee is entitled to recover the entire $91,320 paid on August 5, 1981, to the Defendant less the following sums: (i) the sums that were due within 45 days prior to the payment, and (ii) the amount of new value (*i.e.*, the accrued but unpaid premium) between the date of August 5, 1981, and September 22, 1981.

The parties are directed to confer, to calculate, and to stipulate the amount of premiums so involved, and the trustee shall submit an order in accordance with this opinion. If the parties are unable to stipulate to the amount so calculated, the Court will determine the amount after hearing on application of the trustee.

9. Assuming for these purposes that no double allowance is given for the period of August 5 through August 31 on account of the new value exception discussed above.