In re VILLA ROEL, INC., Debtor.

Bryan S. ROSS, Trustee, Plaintiff,

v.

Joseph PENNY and Helene
Penny, Defendants.

Bankruptcy No. 84–00114.
Adv. No. 84–0178.

United States Bankruptcy Court,
District of Columbia.

Dec. 12, 1985.

Bryan S. Ross, Washington, D.C., for debtor/plaintiff.

Sol J. Pokrass, Rockville, Md., for defendants.

## OPINION AND ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

Before the Court is the Trustee's motion and the defendants' cross-motion for summary judgment. The Trustee's complaint alleges that the defendants, formerly the debtor's landlords, received a voidable preferential transfer of $16,480.68 from the debtor, or alternatively, that the transfer of monies to the defendants was for less than reasonably equivalent value in exchange for such transfer. *See* 11 U.S.C. §§ 547 and 548 (1978).[1] Argument on both motions was heard on March 13, 1985, and pursuant to this Court's directive, post-hearing briefs have been submitted by both parties, most recently on October 25, 1985. Based upon the entire record of this case the Court is compelled to grant the Trustee's motion for summary judgment. A genuine dispute may possibly exist as to whether the landlords were "creditors" of the Debtor. This Court is convinced, and so holds, that the landlords were unquestionably creditors of this debtor, within the meaning of 11 U.S.C. § 547, and thus that there is no question the transaction was a preferential transfer. But if the Court is wrong on this issue, and the landlords were not creditors, then as an alternative basis for decision this Court holds that there is no question the transaction was a fraudulent conveyance under 11 U.S.C. § 548.

## I

The debtor, a District of Columbia corporation, operated a gift shop at 1404 Wisconsin Avenue, N.W., Washington, D.C., from mid-1982 to December 1983. These premises were leased from the defendants, Joseph and Helene Penny, by a lease executed on May 31, 1982, between the Pennys and Edgar Quiroz, Maria Perez-Molina and Fernando Villarroel. Subsequent to the execution of the lease, on July 13, 1982, the debtor was registered to act as a District of Columbia corporation. Prior to incorporating, the lessees had operated a gift shop on the premises under various earlier leases. No steps were taken by any party to assign the May 1982 lease or to sublet the premises formally to the debtor after incorporation.

In late 1983, the debtor negotiated the sale of its assets to Najeh Rodolpho, contingent upon Rodolpho receiving a lease from the defendants. The defendants conditioned giving a new lease to Rodolpho, thereby allowing the sale of the debtor's assets to be consummated, upon the payment of $16,480.68 as satisfaction of rent charges due under the May 1982 lease. This payment was agreed to, and out of the proceeds from the sale to Rodolpho, $16,-480.68 in cash was personally deposited on December 7, 1983 into the defendants' bank account by the debtor's president and its secretary/treasurer.

On March 6, 1984, an involuntary petition in bankruptcy was filed against the debtor, the Villa Roel. An order for relief was entered by this Court on March 29, 1984. As of March 1985, there was approximately $5,000.00 in the estate and over $400,000.00 of scheduled unsecured claims.

## II

A transfer of property of a debtor may be avoided by the trustee as preferential if such transfer was:

1. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, effective in regard to cases filed after October 8, 1984, substantively altered many provisions of the Bankruptcy Code, including sections 547 and 548. Because the debtor's bankruptcy petition was filed prior to the effective date of the 1984 Amendments, those modifications are inapplicable in this Adversary Proceeding. Technical Corrections Act, Pub.L. No. 98–531, sec. 552 (1984).

(1) to or for the benefit of a creditor of the debtor;

(2) for or on account of an antecedent debt;

(3) made while the debtor was insolvent;

(4) made on or within 90 days of the filing of the bankruptcy petition; and

(5) in an amount that enabled such creditor to receive more than such creditor would have received through a Chapter 7 liquidation.

11 U.S.C. § 547(b). The parties dispute whether or not the defendants were creditors of the debtor at the time the monies were deposited into the defendants' bank account, whether or not the defendants actually received more than what they would have been entitled to under a liquidation of the debtor's estate, and whether or not the debtor received new value or reasonably equivalent value from the transfer.

### A

■ The defendants contend that because there was no formal assignment of the lease or subleasing of the premises to the debtor by the original lessees, the debtor was in no way obligated to the defendants under the lease and cannot, therefore, be indebted to the defendants. Sole liability to the defendants under the lease, they assert, belongs with the lease signatories in their personal capacities. Hence, since the defendants were not creditors of the debtor, a voidable preference action cannot lie against them. *See Klein v. Tabatchnick,* 610 F.2d 1043, 1049 (2d Cir.1979): "In order for the trustee to establish a preferential transfer, he had to show that the transferee was a creditor of the bankrupt, *i.e.,* the owner of a demand or claim provable in bankruptcy."

However, it is clear to this Court that the defendants are creditors of the debtor under corporation law doctrine that renders the debtor obligated under the May 1982 lease. It is a long settled rule of law that a corporation may render itself liable on preliminary contracts made by its promoters by accepting the benefits therefrom, thereby adopting the contract by implication or estoppel. *Rees v. Mosaic Technologies, Inc.,* 742 F.2d 765 (3d Cir.1984); *see Air Traffic & Service Corp. v. Fay,* 196 F.2d 40 (D.C.Cir.1952). "Similarly, a corporation is liable under a lease made by its promoters if it enters into possession under such lease." 18 Am Jur.2d *Corporations* § 122, p. 665 (1965).

The record in this case reveals without dispute that two of the three lessees on the lease are both principals and one-third shareholders of the debtor. The wife of the third lessee is the president of the debtor and also a one-third shareholder.[2] Given the closely knit nature of this spearheading group and the absence of involvement by others in the debtor's business affairs, the lease must be considered to have been executed for the benefit of the debtor by its promoters.[3]

Neither party disputes that the debtor took possession of the premises, notwithstanding the lack of the defendants' formal consent, nor that the monthly rental payments were tendered on the corporation's checks. By accepting both the benefit of possession and the obligation of paying rent, thereby impliedly adopting the lease entered into by its promoters, the debtor obligated itself to the landlord-defendants. *See Framingham v. Szabo,* 617 F.2d 897 (1st Cir.1980) (rent checks drawn on corporate-debtor's bank account; debtor accepted benefits with knowledge of contract terms; contract negotiated by president/majority shareholder). This obligation gave the defendants a "claim" against the debtor which in turn made them creditors of the debtor. *See* 11 U.S.C. § 101(4), (9) (definitions). That the landlords did not release and could probably still proceed against the original signa-

---

2. The shareholders of the debtor are:

| | |
|---|---|
| Martha Pilar Quiroz, President | 33 ⅓% |
| Maria Perez-Molina, Secretary/Treasurer | 33 ⅓% |
| Fernando Villarroel | 33 ⅓% |

3. The president of the debtor, Martha Pilar Quiroz, testified at her deposition that "[I]t [the lease] was for the corporation." Quiroz Tr. at 19.

tories to the lease is irrelevant;[4] the pertinent fact is that the debtor by its actions unquestionably made itself personally liable to the landlords.

### B

■ The next issue is whether the defendants actually received more through the subject transaction than they would have under a Chapter 7 liquidation. *See* 11 U.S.C. § 547(b)(5).

If the defendants' landlord's lien could not be avoided by the Trustee, then a factual question might be presented as to whether the defendants received more than they would have in a Chapter 7 liquidation. However, section 545 permits a Trustee to avoid a statutory lien for rent or of distress for rent against property of the debtor. 11 U.S.C. § 545(3), (4); *In re Shines*, 39 B.R. 879, 881 (Bankr.E.D.Va.1984); *In re Teasley*, 29 B.R. 314, 316 (Bankr.W.D.Ky.1983). With approximately $400,000.00 of scheduled unsecured debt against the estate and approximately $5,000.00 of assets in the estate, the defendants received much more through the subject transfer than they would have received as unsecured creditors in a Chapter 7 liquidation.

### C

■ In their cross-motion for summary judgment the defendants assert that the "debtor received more than a 'reasonably equivalent value' in exchange for the transfer," and therefore, that under section 547(c)(1) the Trustee may not avoid the transfer. Defendants' Response In Opposition To Plaintiff's Motion For Summary Judgment And Defendant's Cross-Motion For Summary Judgment, at 12 (filed Jan. 23, 1985). More correctly stated, in terms of § 547, the defendants contend that, by pre-conditioning the giving of a new lease to Rodolpho upon the transfer of $16,480.68 to them, the defendants made possible the consummation of the sale of the debtor's assets to Rodolpho for $100,000.00. This contention, that the defendants gave "new value" by enabling a sale to be consummated, was similarly raised by the defendant-landlord in *In re Lario*, 36 B.R. 582 (Bankr.S.D.Ohio 1983). This Court adopts the *Lario* court's reasoning in dismissing the defendants' assertion that they gave the debtor "new value":

> First, [the landlord] Developers gave nothing "new" to the debtor. Developers' right to evict or not to evict upon default by [the debtor] Lario was a part of the bargain struck when the lease was executed. By forbearing from evicting Lario, Developers was merely exercising a pre-existing right, not giving "new value". In exchange, the debtor's obligation to pay rent in a timely fashion was substituted with an obligation to pay an antecedent debt. This substitution of one obligation for another is specifically excluded from the definition of "new value" under § 547(a)(2). *In re Duffy*, 3 B.R. 263 (Bankr.S.D.N.Y.1980).
>
> Second, Developers' forbearance could hardly be termed "contemporaneous" with the payment of back rent which it received in November, 1982. Indeed, its forbearance began in June of 1982 when Developers first had the option of exercising its rights under the default provisions of the lease.

36 B.R. at 854.

### III

■ The question of "reasonably equivalent value" arises in a different context under 11 U.S.C. § 548. Section 548 does

---

**4.** Thus, cases cited by the landlord-defendants dealing with the continuing liability of original obligors are clearly distinguishable.

It is not at all unusual for one to become a creditor not by one's own volition but by the wrongful act of another. Neither the recipient of a bounced check nor the victim of a scam or an assault has chosen to become or has performed any act so as to become the creditor of the wrongdoer. Yet, solely because of the wrongdoer's acts, both indubitably are his creditors.

**883**

not require "new value." For purposes of § 548, "value" includes the "satisfaction or securing of a[n] ... antecedent debt..." However, the debt so satisfied must, by statutory definition, be a "debt *of the debtor*..." (emphasis added). Hence, if there was no debtor-creditor relationship between the debtor and the landlords in this case, then the debtor's transfer of funds to the landlords was not for "value" within the meaning of § 548, and thus that transfer is avoidable by the trustee under § 548.[5]

### IV

 The final proposition set forth by the defendants, that under section 550(b)(1) the Trustee may not recover the monies transferred to them, must be disregarded because the statute relied upon is clearly inapplicable to the facts at bar. Section 550(b) prevents recovery from good faith *secondary* or *subsequent* transferees who take such transfer in exchange for giving value and without knowledge of the voidability of the transfer. 4 *Collier on Bankruptcy*, ¶ 550.03[1] (15th ed. 1985). As initial transferees of the Debtor's funds sought to be recovered, the defendants are not eligible to assert the protection that section 550(b) provides to subsequent transferees.

For the reasons stated above, the Trustee is entitled to recover from defendants Joseph and Helene Penny, as transferees, $16,480.68, the amount of the Debtor's monies transferred.

NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that in the absence of a genuine dispute on any material fact establishing an avoidable preferential transfer to the defendants, the Trust-

ee's motion for summary judgment is hereby GRANTED, and it is

FURTHER ORDERED that the defendants' cross-motion for summary judgment is hereby DENIED.

---

**5.** Under prior law, which spoke in terms of "fair consideration" rather than "reasonably equivalent value," the courts held that "[t]ransfers made to benefit third parties are not made for 'fair' consideration." *In re Christian & Porter Aluminium Co.*, 584 F.2d 326, 337 (9th Cir. 1978). However, the courts also recognized a qualification to that rule in cases where the debtor benefited indirectly through benefit to a third person. *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991–992 (2d Cir.1981).

Whether that qualification has survived the explicit requirement in the new statute that the debt satisfied must be that "of the debtor" is problematic. Since this Court's holding under § 548 is merely an alternative to its holding under § 547, and since the Court is thoroughly convinced of the correctness of the holding under § 547, the Court will not explore further at this time the question of the continued vitality of the "indirect benefit" rule.