**In re MAXWELL NEWSPAPERS, INC. d/b/a Daily News, Debtor.**

**The OFFICIAL COMMITTEE OF UNSE-CURED CREDITORS OF MAXWELL NEWSPAPERS, INC. d/b/a Daily News, Plaintiff,**

**v.**

**The TRAVELERS INDEMNITY COMPA-NY, The Travelers Insurance Company, The Travelers Indemnity Company of Il-linois, and The Phoenix Insurance Com-pany, Defendants.**

**Bankruptcy No. 91 B 15531 (TLB).**
**Adv. P. No. 93–9937A.**

United States Bankruptcy Court,
S.D. New York.

Feb. 26, 1996.

Winston & Strawn (Howard Seife, Augustine H. Kim, of counsel), New York City, for Plaintiff.

Phillips Nizer Benjamin Krim & Ballon L.L.P. (Eric G. Waxman, III, of counsel), Garden City, NY, Ralph Chin, Hartford, CT, for Defendants.

## DECISION ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

TINA L. BROZMAN, Bankruptcy Judge.

Two questions are presented on these cross-motions for partial summary judgment regarding the "subsequent new value" defense to an otherwise avoidable transfer: (i) does the continued provision of insurance coverage constitute new value and (ii) if it does, is the defense unavailable nonetheless because the cost of that coverage was subsequently paid by a concededly preferential transfer? The plaintiff contends that the insurance coverage represents mere forbearance, rather than "material" new value, so that it is no salve for the defendants' wounds. In any event, the plaintiff says, the defense is eviscerated by the subsequent payment for the coverage.

### I.

Maxwell Newspapers, Inc. (the "Debtor") filed its chapter 11 petition on December 5, 1991 (the "petition date"). Pursuant to a court-approved stipulation the Debtor assigned responsibility for the prosecution of this adversary proceeding to its Official Committee of Unsecured Creditors (the "Committee").

The Debtor had procured certain insurance coverage from the defendants ("Travelers") for the period from March 20, 1991, to July 1, 1991 (the "Initial Insurance Period.") The premium obligation for the Initial Insurance Period was $1,114,980, subject to adjustment after an audit. The Debtor paid this premium by check dated September 4, 1991 (the "September Payment"). There is some dispute as to when that check was actually honored, but for the purposes of their cross-motions, the parties agree I should assume the September Payment was made within ninety days of the petition date.

The Debtor renewed its insurance policies with Travelers for the period from July 1, 1991, to July 1, 1992 (the "Renewal Period"). The premium obligation for the Renewal Period was $5,432,941, to be paid in quarterly installments. The premium payment for the first quarter of the Renewal Period was made prior to the period in which transfers may be held preferences. This immunity from attack did not extend to the premium payment for the second quarter, however. It was paid in fourteen installments by checks dated between November 12, 1991, and December 2, 1991 (the "Second Quarter Payment"), within ninety days of the petition date.

In its amended complaint, the Committee seeks to recover the September Payment and the Second Quarter Payment as preferential transfers pursuant to section 547(b) of the Bankruptcy Code (the "Code"). Travelers has asserted seven affirmative defenses, only the fifth of which is relevant to these motions. That defense alleges that Travelers contributed "new value" to the Debtor in the form of insurance coverage after the date of the September Payment such that pursuant to section 547(c)(4) of the Code the payment is unavoidable to the extent of the new value provided. Acknowledging that there are no material disputed facts with respect to this

affirmative defense, both sides have moved for partial summary judgment.

## II.

Section 547(b) of the Code allows a trustee (or a debtor-in-possession) to avoid certain payments made to creditors on or within 90 days before the date of the filing of the petition. Section 547(c) contains exceptions to the general definition of a preference set forth in the previous section. In particular, under section 547(c)(4), a trustee may not avoid an otherwise preferential transfer "to the extent that after such transfer, [the] creditor gave new value to or for the benefit of the debtor ... (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." "New value" is defined by section 547(a)(2) as "money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation." One commentator has described the exceptions enumerated in section 547(c) as being "designed to rescue from attack in bankruptcy those kinds of transactions, otherwise fitting the definition of a preference, that are essential to commercial reality and do not offend the purposes of preference law, or that benefit the ongoing business by helping to keep the potential bankrupt afloat." 1 DAVID G. EPSTEIN, ET AL., BANKRUPTCY § 6–22 at 587 (1992) (quoting Orelup, *Avoidance of Preferential Transfers Under the Bankruptcy Reform Act of 1978*, 65 IOWA L.REV. 209, 233 (1979)).

With the statutory background in place, we turn to Travelers' asserted new value defense. Simply put, the contention is that the September Payment, even if preferential, was partially replaced with subsequent new value in the form of the insurance coverage Travelers provided up until the petition date. That new value, the argument continues, was not paid for by "an otherwise unavoidable transfer" because, as Travelers has conceded, the Second Quarter Payment was indeed avoidable. The Committee's response is threefold; I shall address each prong separately.

### A. New Value

#### 1. Insurance Coverage as Within or Without the Statutory Embrace

■ Looking to section 547(a)(2), which defines new value, to the extent pertinent, to include goods, services, or new credit, the Committee argues that its plain language effectively excludes continuing insurance coverage from the embrace of the new value exception. Although it cannot support its position with any case law, the Committee notes that in defining "new value," Congress did not employ the broader definition of "value" that is set forth in the Uniform Commercial Code. There, value is defined as "consideration sufficient to support a simple contract." *See* N.Y.U.C.C. § 1–201(44). I am not clear what this proves. Without a doubt, "new" value cannot be as broad as "value"—Congress chose to exclude credit toward pre-existing debt. The rationale for such exclusion is apparent: "That a payment be 'for or on account of an antecedent debt' is one of the necessary elements for *voidability* of a transfer under section 547. If 'new value' included credit toward such debts, thus rendering such transfers categorically *nonavoidable*, section 547 would be rendered a tautological nullity." *In re Chase & Sanborn Corp.*, 904 F.2d 588, 596 (11th Cir.1990) (emphasis in original).

None of this has anything much to do with the Committee's contention that the broad definition of "new value" does not include insurance coverage. That the Committee has come up with no underlying rationale for its argument is not surprising. For the Committee's constricted interpretation of new value is in fact inimical to the principles that animate the subsequent new value exception. "The 'new value' defense is grounded in the principle that the transfer of new value to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of the other creditors." *Futoran v. Rush (In re Futoran)*, 76 F.3d 265, 267 (9th Cir.1996) (quoting *Rodgers v. Schneider (In re Laguna Beach Motors*,

*Inc.)*, 148 B.R. 322, 324 (9th Cir. BAP 1992)). This defense is fundamental to the "rehabilitative" policy goal of the preference law, which "is intended to encourage creditors to deal with troubled businesses." *Wolinsky v. Central Vermont Teachers Credit Union (In re Ford)*, 98 B.R. 669, 679 (Bankr.D.Vt.1989) (citations omitted); *see also Young v. Continental Worsteds, Inc. (In re Wingspread Corp.)*, 120 B.R. 8, 10 (Bankr.S.D.N.Y.1990).

Excluding insurance from the definition of new value would generate two results, both at odds with the rationale for the existence of the statutory exception: (i) it would ignore the value that inheres in assuming someone else's risk, and (ii) it would discourage insurers from renewing insurance policies with financially-distressed entities.

The Committee concedes, perhaps in recognition of the foregoing, that its interpretation of "new value" may be "harsh." Yet it contends that the clear and unambiguous language of the statute mandates the result it seeks, because, the Committee argues, insurance coverage is not a good, service, or extension of credit. According to the Committee, "service," as employed in section 547, only encompasses those activities involving physical labor. The derivation of the Committee's belief has not been revealed to the court.

The Committee's proffered definition of "service" is demonstrably at odds with the case law. In *Eisenberg v. JL Int'l, Ltd. (In re Sider Ventures & Servs. Corp.)*, 33 B.R. 708, 713 n. 2 (Bankr.S.D.N.Y.1983), *aff'd*, 47 B.R. 406 (S.D.N.Y.1985), my colleague Judge Abram opined that a guarantor who was the subject of a preference action had "provided money's worth in the form of a service to wit, acting as a guarantor[.]" This proposition, while dictum, was subsequently ratified by holdings in *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1281 n. 12 (8th Cir. 1988) and *Reigle v. Mahajan (In re Kumar Bavishi & Assoc.)*, 906 F.2d 942, 945 (3d Cir.1990), which both cited *Eisenberg* approv-

ingly. *See also Official Bondholder's Committee v. Eastern Utilities Assoc. (In re EUA Power Corp.)*, 147 B.R. 634, 645 (Bankr.D.N.H.1992). Thus we see that the courts have accepted as a "service" endeavors not limited to physical labor.

In addition, courts have taken for granted that the provision of insurance constitutes "services" for the purposes of section 507(a)(4), which gives priority to claims for contributions to employee benefit plans "arising from services rendered within 180 days before the date of the filing...." § 507(a)(4)(A). *See Perlstein v. Rockwood Ins. Co. (In re AOV Indus., Inc.)*, 85 B.R. 183, 186–87 (Bankr.D.Co.1988); *In re Saco Local Dev. Corp.*, 23 B.R. 644, 648 (Bankr. D.Me.1982), *aff'd*, 711 F.2d 441 (1st Cir.1983). Absent a good reason, which the Committee has not furnished, I can see no basis for distinguishing "services" in the section 507 cases from those in the preference cases.

Although the Committee has provided no case authority for its position, the same cannot be said of Travelers. Travelers has cited two cases in support of the proposition that insurance coverage constitutes new value. *See Clark v. Frank B. Hall & Co. (In re Sharoff Food Serv., Inc.)*, 179 B.R. 669, 678–79 (Bankr.D.Co.1995) ("The Court finds that providing insurance did constitute new value.... It is the continuing coverage that provides the new value."); *Larose v. Bourg Ins. Agency (In re Dick Henley, Inc.)*, 45 B.R. 693, 699 (Bankr.M.D.La.1985). The Committee responds that because in both those cases the premium obligation was never paid, it was not the provision of insurance *per se* that constituted the new value, but rather the concomitant extension of credit that fell within section 547(a)(2). That may be true in *Dick Henley* ("To the extent that the Debtor received new credit from the insurance company subsequent to the ... payment, that new credit constitutes new value....") but it is not so in *Sharoff*.[1] *Sharoff's* unequivocal language was predicated upon a finding that it was the insurance itself

---

1. *Dick Henley* stands for the proposition that the extension of credit constitutes new value. It does not stand for the proposition, however, that the continued provision of insurance does not constitute new value. Having found that credit was extended, the court had no need to determine whether the continuing insurance coverage could be considered new value.

that constituted the new value. Moreover, because the payment that the Committee says distinguishes this case from *Sharoff* was itself avoidable, the Committee's interpretation would have me treat the subsequent payment that Travelers received as, on the one hand, legitimate to prevent Travelers from successfully invoking the new value defense while, on the other, as avoidable and subject to disgorgement. Such a result would be neither rational nor equitable.

### 2. Whether Continuing Insurance Coverage is Mere Forbearance

Even if the provision of insurance coverage may in general constitute new value, the Committee says, where, as here, the insurance company is not entering into a new policy but is performing under a pre-existing policy, its performance is not new value, but mere forbearance from terminating coverage.

The general proposition on which this argument is constructed is that forbearance does not constitute new value. I have no quarrel with the general proposition. *See, e.g., Alithochrome Corp. v. East Coast Finishing Sales Corp. (In re Alithochrome Corp.),* 53 B.R. 906, 912–13 (Bankr.S.D.N.Y. 1985) (Brozman, J.) (creditor forbearance from executing on judgment is not new value). However, the Committee misinterprets that general rule by arguing for its application here.

As I explained earlier in this decision as well as years ago in *Wingspread,* the contemporaneous and subsequent new value exceptions seek to encourage creditors to continue dealing with troubled businesses. *Wingspread,* 120 B.R. at 10; *Ford,* 98 B.R. at 679. Although under those exceptions creditors get to keep what otherwise would have been avoidable preferences, principles of equality of distribution are not offended because such creditors have not "diminish[ed] the debtor's estate to the detriment of [other] creditors." EPSTEIN, *supra* at 588.

With the statutory purpose in mind, it is not difficult to understand why simple forbearance does not fall into the definition of new value. When a creditor threatens to exercise a legal remedy against a debtor, and in exchange for not so doing extracts a payment for antecedent debt, nothing of value has accrued to the debtor estate to compensate other creditors for the loss of that payment.[2] The creditor has not conducted any additional business with the debtor, and equality of distribution has been compromised. Such a transaction falls squarely within the ambit of the preference law, rather than within its exceptions. *See Waldschmidt v. Chrysler Credit Corp. (In re Messenger),* 166 B.R. 631, 636 (Bankr.M.D.Tenn. 1994) ("A transfer of property to extinguish an antecedent debt is the essence of a preference, not the essence of a preference defense."). Hence, courts have frequently held that "forbearance from exercising pre-existing rights does not constitute new value under § 547(a)(2)." *American Bank v. Leasing Serv. Corp. (In re Air Conditioning Inc.),* 845 F.2d 293, 298 (11th Cir.1988), *cert. denied sub nom., First Interstate Credit Alliance, Inc. v. American Bank of Martin County,* 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988) (citations omitted).

This case is not like the one where a creditor forebears from suing on a debt in return for a partial payment. In that instance, the estate is not augmented. But here, Travelers provided something which added value to the estate—insurance coverage. It is not the fact that Travelers refrained from terminating the policy which constitutes the value; it is the fact that Travelers incurred additional risk by continuing coverage. This is not dissimilar from the landlord-tenant context, in which a debtor's occupancy of a premises may be a basis for a finding of new value. *See Sapir v. Eli Haddad Corp. (In re Coco),* 67 B.R. 365, 371 (Bankr.S.D.N.Y.1986) ("The new value ... is the debtor's right to occupancy for that month."); *see also Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.),* 78 F.3d 18, 24–25 (2d Cir.1996) (dictum); *Everlock Fastening Sys., Inc. v. Health Alliance Plan (In*

---

**2.** There is of course a reduction in the estate's indebtedness, but that is no benefit where the preferred creditor has been paid one hundred cents on the dollar and the remaining creditors will be paid a lesser percentage.

re Everlock Fastening Sys., Inc.), 171 B.R. 251, 255 (E.D.Mich.1994); *but cf. Bavely v. Merchants Nat'l Bank (In re Lario),* 36 B.R. 582 (Bankr.S.D.Ohio 1983).

The reported decisions support the notion that augmentation of the estate distinguishes new value from mere forbearance. *Schlant v. Schueler (In re Buffalo Auto Glass),* 187 B.R. 451, 454 (Bankr.W.D.N.Y.1995); *see also Ford,* 98 B.R. at 682 ("In determining whether a creditor has extended 'new value' ... the issue before the Court is whether there is an augmentation or material benefit to the debtor's estate."); *Precision Masters, Inc. v. Wilson–Garner Co. (In re Precision Masters, Inc.),* 51 B.R. 258, 261 (Bankr. S.D.Ind.1984) ("Additional value must be received to augment the estate in order to offset the preferential payment.").

The seminal Code case to deal with this issue, *In re Duffy,* 3 B.R. 263 (Bankr. S.D.N.Y.1980), a case on which the Committee mistakenly relies, concerned a chapter 7 individual debtor. The debtor had entered into a lease agreement with a car rental agency for a long-term automobile rental and had made a $400 payment to the agency within the ninety-day preference period. The agency contended that the debtor's subsequent use of the automobile constituted a contribution of new value. The late Judge Schwartzberg there held that it did not, and properly so, because the use of an automobile by a chapter 7 debtor is of absolutely no value to his creditors. The decision is often cited for the general proposition that forbearance does not constitute new value, yet a careful reading reveals the rationale underlying Judge Schwartzberg's decision to be somewhat narrower:

> A creditor who gives new value in exchange for the receipt of a payment from the debtor has not depleted the debtor's estate to the detriment of other creditors. In the instant case, a forbearance by Avis from repossessing the rented vehicle does not enhance the value of the debtor's estate. The debtor's continued right to drive the rented vehicle is not an asset of benefit to his creditors that could reasonably off-

set the diminution of his estate upon the payment of the $400.

*Id.* at 266. Similarly, in *Lario,* 36 B.R. at 584, the court made the categorical statement that by forebearing from evicting the debtor, the landlord "was merely exercising a pre-existing right, not giving 'new value'." *Id.* But at the same time, the court found that the landlord's "contention that its forbearance added value to the estate" was "thoroughly speculative," and that there was no evidence to support it. *Id.* The court may well have found differently had the landlord's attorney done a better job of proving what was asserted. *Cf. Charisma Inv. Co., N.V. v. Airport Sys., Inc. (In re Jet Florida Sys., Inc.),* 841 F.2d 1082, 1084 (11th Cir. 1988) (creditor's "forbearance might have constituted new value had [the debtor] actually stayed and used the leased property. . . .").

This focus on benefit to the estate also applies section 547(a)(2) "in a way that supports the principles underlying preference law." *See* Note, *New Value and Preference Avoidance in Bankruptcy,* 69 WASH.U.L.Q. 875, 898 (1991). First, it excludes those creditors who did not conduct new business with the debtor, but merely attempted to coerce a preferential payment for an antecedent debt. Second, it does not offend principles of preference law because a creditor who has contributed new value to the debtor's estate will only be protected to the extent it has replaced its preference with genuine new value. Accordingly, because the provision of insurance coverage was a benefit to the estate, I conclude that it constitutes "new value" under section 547(a)(2).

*B. Effect of the Second Quarter Payment*

■ We turn to the Committee's contention that the new value defense, if applicable in theory, is unavailable in fact because the premium was paid by the Second Quarter Payment, itself a preference. According to the Committee, the subsequent new value defense is defeated by a still later payment regardless of whether that payment is disgorged. The argument is curious in light of the actual wording of section 547(c)(4)(B) to the effect that the subsequent new value

defense applies unless the debtor made "an otherwise unavoidable transfer" to or for the benefit of its creditor. In support the Committee understandably relies on *Braniff, Inc. v. Sundstrand Data Control, Inc.· (In re Braniff, Inc.),* 154 B.R. 773, 782–787 (Bankr. M.D.Fla.1993). In that case, the court did hold that a creditor could not assert a subsequent new value defense because the creditor had gotten paid for the new value, even though the payment received by the creditor was itself avoidable. The correctness of *Braniff* is questionable, despite its adherence to what it described as the "majority rule" nationwide. *Id.* at 783. In particular, the court cited to *Jet Florida,* 841 F.2d 1082, for the governing test to determine whether or not a subsequent new value defense is available. In *Jet Florida,* the Eleventh Circuit, in *dicta,* reiterated the following test, which can be found in a good number of reported decisions:

> [§ 547(c)(4)] has generally been read to require: (1) that the creditor must have extended the new value after receiving the challenged payments, (2) that the new value must have been unsecured, and (3) that the new value *must remain unpaid.*

*Id.* at 1083 (citations omitted) (emphasis added). Yet in *Jet Florida,* the creditor seeking to invoke the subsequent new value exception was not paid for its alleged new value contribution at all, whether with an avoidable payment or otherwise. Thus, the issue of whether an avoidable payment can defeat an otherwise valid subsequent new value defense never arose. *See Jet Florida,* 841 F.2d at 1082–83.

Although the foregoing case law undoubtedly supports the Committee's contention, it is important to note that at oral argument, counsel to the Committee did not advance any rationale whatsoever to justify the position of the *Braniff* court. Indeed, there is none. Section 547(c)(4), by its express terms, provides that payment for new value will defeat a subsequent new value defense only if that payment is unavoidable. That very fact is sufficient grounds for rejecting the Committee's position. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citation omitted); *Starzynski v. Sequoia Forest Indus.,* 72 F.3d 816, 820 (10th Cir.1995). Here, it is not the plain meaning of the statute, but rather the Committee's implausible interpretation of it, that is at odds with the statutory purpose. There is no logical reason to distinguish between a creditor that was paid by an avoidable transfer and one that was never paid at all. At the end of the day, in both cases, the creditor has been wholly uncompensated for his new value. And both creditors should be assured that they can retain satisfaction received for their new value contribution so as to encourage dealings with troubled entities. Moreover, preference law principles are not offended in either case, because the net recovery to the creditor will never exceed the new value contributed. In any case, "it begs the question to resort to policy considerations in interpreting and applying the subsequent new value exception when a plain reading of the statute will suffice." Harris P. Quinn, *The Subsequent New Value Exception Under Section 547(c)(4) of the Bankruptcy Code: Judicial Gloss is Creditors' Loss,* 24 Mem.St.U.L.Rev. 667, 678 (1994).

The obvious question is if the statute is unambiguous, then how did the *Braniff* court err while following so many similarly worded cases that the court dubbed them the "majority rule?" It was by a comedy of errors which has been carefully chronicled in *Boyd v. The Water Doctor (In re Check Reporting Servs., Inc.),* 140 B.R. 425 (Bankr.W.D.Mich. 1992) and need not be repeated here.[3] It bears noting, however, that most of the courts that are cited as requiring that subsequent new value be "unpaid," have not actually held as much, but, like *Jet Florida,* have

**3.** *Check Reporting Services* has been described as a "forcefully advocated ... scholarly opinion ... likely to change the weight of authority over time." Lawrence Ponoroff, *Evil Intentions and an Irresolute Endorsement for Scientific Rationalism: Bankruptcy Preferences One More Time,* 1993 Wis.L.Rev. 1439, 1523 (1993).

only repeated that requirement in *dicta.* *See, e.g., Alfa Mutual Fire Ins. Co. v. Memory (In re Martin),* 184 B.R. 985, 995 (Bankr. M.D.Ala.1995); *Ford,* 98 B.R. at 680. This explains those courts' employment of the term "unpaid" not as a statement of law, but rather as a "shorthand description of § 547(c)(4)(B)." *Laker v. Vallette (In re Toyota of Jefferson, Inc.),* 14 F.3d 1088, 1093 n. 2 (6th Cir.1994). In fact, *Braniff* is one of the few reported cases to have actually adopted the "unpaid" standard as decisional law.

### C. Travelers' Remaining Unsecured Claim

■ In addition to disputing the applicability of the subsequent new value defense to the present case, the Committee also disagrees with Travelers about the consequence of the defense if it is available to Travelers. According to the Committee, in order for Travelers to maintain its subsequent new value defense, it must give up its unsecured claim against the estate for the insurance coverage constituting its new value contribution, or otherwise, Travelers would be "permitted to recover twice on account of [its subsequent new value] defense." (Committee Memorandum of Law at 16).

Again, the Committee is in error; Travelers does not seek to recover twice on the same claim but only to recover once on each of two separate claims. Its subsequent new

value defense serves to protect the payment it received within the preference period on account of antecedent debt. Thus, Travelers can have no claim against the Debtor for that antecedent debt. However, because Travelers will have to disgorge the preferential Second Quarter Payment, it will now be uncompensated for the second quarter insurance coverage it provided to the Debtor. Pursuant to section 502(h) of the Code, once Travelers disgorges the preference, it will have an unsecured claim for the value of that insurance coverage, for which it may recover in accordance with the terms laid out in the Debtor's confirmed plan of reorganization. *Accord Erman v. Armco, Inc. (In re Formed Tubes, Inc.),* 46 B.R. 645, 647 (Bankr. E.D.Mich.1985); *Columbia Packing Co. v. Allied Container Corp. (In re Columbia Packing Co.),* 44 B.R. 613, 614–15 (Bankr. D.Mass.1984).[4]

### III.

In accordance with the foregoing discussion, Travelers' motion for partial summary judgment on its fifth affirmative defense is granted. The Committee's cross-motion for summary judgment on the same issue is denied. Travelers is directed to SETTLE an ORDER consistent with this decision.

---

4. In support of its contrary contention, the Committee purports to identify an "absurd result" that would follow if Travelers were permitted to retain its claim for its new value contribution. According to the Committee, Travelers may have a section 507(a)(4) priority claim for its new value contribution, whereas the antecedent debt that was paid by the September Payment may constitute a general unsecured claim. Thus, the Committee continues, allowing Travelers to effectively replace its older claim for this newer one would allow Travelers to recover more of its aggregate claim than it would have if the Second Quarter Payment had not been avoidable at all.

The Committee's argument, while appealing at first blush, overlooks one important fact. Travelers has recognized that if it were to prevail on its cross-motion for summary judgment, it would have to concede that the Second Quarter Payment was an avoidable preference. (If the Second Quarter Payment were unavoidable, then the new value defense would be defeated.) Pursuant

to section 547(b)(5)(B), a transfer is only preferential if it enabled a creditor to receive more than it would have had the transfer not been made. Thus, Travelers could never assert a section 507(a)(4) priority claim, thereby asserting a right to a 100% recovery pursuant to the Debtor's confirmed plan, without contradicting its concession of the avoidability of the Second Quarter Payment. Travelers will therefore have only a general unsecured claim regardless of whether it is on account of the new value contribution or the antecedent debt, and the estate will not be worse off because of the avoidability of the Second Quarter Payment. The Committee's argument may have had merit if the class of priority claimants had agreed to recover less than 100% of their claims, or, if in a chapter 7 case, there were insufficient funds in the estate to pay all priority claims in full, but the legal analysis under those circumstances is best saved for cases that present them.