In re Roger A. MESSENGER, Jr. and Sheryl B. Messenger, Debtors.

Robert H. WALDSCHMIDT, Trustee, Plaintiff,

v.

CHRYSLER CREDIT CORP., Defendant.

Bankruptcy No. 93–07080–KL3–7. Adv. No. 393–0432A.

United States Bankruptcy Court, M.D. Tennessee.

April 8, 1994.

Robert H. Waldschmidt, Trustee, Nashville, TN, pro se.

W. Neal McBrayer, Nashville, TN, for Chrysler Credit Corp.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The question presented is whether Chrysler Credit's efforts to perfect a security interest in the debtor's truck during the 90 days before bankruptcy created an avoidable preference. The security interest is avoidable. The following are findings of fact and conclusions of law. Fed.R.Bankr.P. 7052.

### I

On May 5, 1993 the debtor took delivery from a car dealer of a Dodge truck with vehicle identification No. 1B7GE16X2PS248968. The retail installment contract was complete in all respects but mistakenly identified a different Dodge truck, vehicle identification No. 1B7GE16XXPS256851. The VIN on the contract was an error by the car dealer. The debtor made a payment to Chrysler Credit on June 17, 1993 consistent with the contract of May 5, 1993.

The incorrect VIN was discovered when application to the State of Tennessee for a certificate of title and notation of Chrysler's lien was refused because a title had already been issued for VIN 1B7GE16X2PS248968.

On July 6, 1993, the debtor signed a second retail installment contract, identical to the contract of May 5, 1993, except the VIN on the second contract was the VIN of the truck delivered to the debtor on May 5, 1993 and the first payment due date on the second contract was August 20, 1993 instead of June 19, 1993.

On July 8, 1993, the dealer submitted a title application to the State of Tennessee with respect to the truck delivered to the debtor on May 5, 1993. A certificate of title noting Chrysler's lien was issued on July 8, 1993. On July 12, 1993, Chrysler refunded the payment the debtor made on June 17, 1993.

On September 13, 1993, the debtor filed Chapter 7. The Chapter 7 trustee filed this complaint to avoid Chrysler's security interest pursuant to 11 U.S.C. § 547. The trustee and Chrysler filed cross-motions for summary judgment.

### II

11 U.S.C. § 547(b) defines a preference as:

(b) ... any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent; [1]

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

1. The presumption of insolvency in 11 U.S.C. § 547(f) was not contested.

The retail installment contract of May 5, 1993 created a debt between the debtor and the car dealer. "Debt" for bankruptcy purposes is defined by 11 U.S.C. § 101(12) to mean "liability on a claim." "Claim" is broadly defined by 11 U.S.C. § 101(5) to mean "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or ... right to an equitable remedy." As between the debtor and the car dealer, the May 5 contract gave the car dealer a right to 60 monthly payments of $368. Consistent with the contract, the debtor made a $368 payment on June 17, 1993. Chrysler, understandably, does not contend that the VIN error abrogated the debtor's obligation to pay for the truck delivered on May 5, 1993.

The 90–day preference period in 11 U.S.C. § 547(b)(4) began on June 15, 1993. When Chrysler entered the preference period, because of its dealer's mistake, it did not have a perfected security interest in the truck that was delivered to the debtor on May 5, 1993. Although this mistake was "innocent", the preference statute is blind to intent or fault.[2]

The perfection of Chrysler's security interest in the truck on July 8, 1993 was a transfer on account of an antecedent debt. 11 U.S.C. § 547(e)(2)(B) defines perfection of a security interest to be a transfer for preference purposes where, as here, perfection occurs after 10 days after transfer of the collateral to the debtor. There is no dispute that, but for perfection of its security interest, Chrysler's recovery in this Chapter 7 case would be substantially less than it now asserts. Perfection of Chrysler's security interest on July 8, 1993 is an avoidable preferential transfer.

Chrysler realizes that perfection of its security interest on July 8 is preferential if the debt to which that transfer relates is the debt that arose on May 5, 1993. To avoid this result, Chrysler argues that the dealer and the debtor "mutually rescinded" the May 5 transaction just before the second contract on July 6.

Chrysler has not proven that the debtor and the car dealer mutually rescinded the retail installment contract of May 5, 1993.[3] However, assuming the debtor and the car dealer rescinded the May 5 transaction on July 6, 1993, Chrysler's argument is fatal of its own position.

As Chrysler explains, "the antecedent debt that the trustee relies on ... was extinguished by the rescission of the May 5, 1993 retail installment contract ... rescission avoids the transaction and returns the parties to their status before the transaction." In other words, it is Chrysler's contention that just before execution of the second contract on July 6, 1993, the debtor returned to the dealer all rights in the truck and the dealer released the debtor from any obligation to pay pursuant to the contract of May 5, 1993. Chrysler cites its refund of the

---

2. The enactment of the Bankruptcy Code in 1978 removed any "scienter" requirement for preference recovery. The knowledge or intent of the creditor is irrelevant in determining whether an avoidable transfer occurred. *See* H.R.Rep. No. 595, 95th Cong., 2nd Sess. 177–79 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5787, 6137–6139. *See also T.B. Westex Foods, Inc. v. FDIC (In re T.B. Westex Foods, Inc.),* 950 F.2d 1187, 1194 (5th Cir.1992); Vern Countryman, *The Concept of a Voidable Preference in Bankruptcy,* 38 Vand. L.Rev. 713, 726–32 (1985).

3. Because this contract involved the sale of goods in excess of $500, it is governed by Article 2 of the Tennessee Uniform Commercial Code. The Tennessee UCC provides that an "agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded." Tenn.Code Ann. § 47–2–209. This retail installment contract contains such a clause. In addition, this contract falls within the statute of frauds. Tenn.Code Ann. § 47–2–201. A sales contract which falls within the statute of frauds can only be rescinded by written agreement signed by the party against whom rescission is sought. *See* Tenn.Code Ann. §§ 47–2–209(3); 47–2–201. No evidence of any written rescission agreement has been presented. The debtor remained in continuous possession and enjoyment of the truck. On these cross-motions for summary judgment, Chrysler Credit had the burden of proof with respect to its defense of rescission. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

debtor's June 17 car payment in support of this argument.[4]

■ The rescission of an unperfected "secured" transaction during the 90 days before bankruptcy is the essence of an avoidable transfer. The Bankruptcy Code broadly defines transfer to include "... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or departing with property or with an interest in property...." 11 U.S.C. § 101(58)[54]. If the debtor returned the dealer to its "status" before the May 5 transaction, then the debtor made a transfer to the dealer for bankruptcy purposes of the debtor's interest in the truck.

Immediately before July 6, 1993, Chrysler had an unperfected security interest in the truck. The debtor had possession and use of the truck and was making payments consistent with the (antecedent) May 5, 1993 contract. Rescission gave Chrysler more than it would have realized had no transfer occurred. Absent rescission, for the reasons discussed above, the Chapter 7 trustee would avoid the perfection of Chrysler's security interest on July 8, 1993. Chrysler's rescission defense proves all the elements of an avoidable preference.

At least one other reported decision recognizes that rescission of an installment contract on the eve of bankruptcy can be a preferential transfer. In *Armstrong v. Hustad (In re Flaten)*, 50 B.R. 186, 192 (Bankr. D.N.D.1985), the debtors bought real property and a business pursuant to an installment contract for deed. A month or so before bankruptcy, the debtors and the seller mutually rescinded the contract and the debtors returned the property to the seller. The court found that the mutual rescission was a preferential transfer:

> Even if this Court were to determine that the Debtors and the [sellers] mutually agreed to a rescission of the contract for deed, the Trustee may recover an interest in the property upon proof of a preferen-

tial transfer under 11 U.S.C. § 547. Under section 547 of the Bankruptcy Code, a trustee is allowed to recover a payment or transfer of property made within a period of 90 days prior to the bankruptcy filing which was credited against a debtor's antecedent obligation and which results in a greater return for the creditor than that which he would receive under bankruptcy liquidation.... [A] vendee under a contract for deed holds an interest in property. Accordingly, an agreement to rescind the contract for deed and return the property to a vendor results in a transfer of property to the vendor. In the present instance, if the Court were to construe the Debtors' action as a mutual rescission and voluntary return of the property, it is clear that a transfer of property took place within a period 90 days prior to the bankruptcy filing. The Debtors' obligation to the [sellers] arose at the time the contract for deed was executed in 1980. The transfer of property was made, therefore, to satisfy an obligation which existed long before the transfer took place.... [I]f the Court finds that the Debtors voluntarily returned the property due to a mutual rescission of the contract rather than simply breached their obligations under the contract for deed, the Trustee would be able to recover an interest in the real estate pursuant to 11 U.S.C. § 547 since the Debtors' action would have resulted in a preferential transfer.

50 B.R. at 192.

Chrysler's position would enshrine "mutual rescission" as the perfect preference defense. Every unpaid seller willing to accept return of the goods in satisfaction of its unpaid debt would "rescind" and escape preference scrutiny. What lender with a debt in default would not accept "rescission" rather than "repayment" if the characterization would insulate the lender from preference recovery in the event of bankruptcy within 90 days?

4. The "mutual rescission" contemplated here by Chrysler is the variety that includes restitution of the parties' pre-contract positions. *See* 15 Walter Jaeger, Williston on Contracts § 1827 p. 490 (3d ed. 1970); 2 Henry C. Black, black on Re- scission and Cancellation § 521 p. 1283 (2d ed. 1929); 5A Arthur L. Corbin, Corbin on Contracts § 1236 (1964); E. Allan Farnsworth, Contracts § 4.24 (1982). However, it is stipulated that the debtor never relinquished the truck.

### III

In a variation on its rescission argument, Chrysler argues that rescission of the May 5, 1993 contract and execution of the July 6, 1993 contract were a contemporaneous exchange for new value under 11 U.S.C. § 547(c)(1).[5] Chrysler contends it gave two measures of "new value" to the debtor: (1) Chrysler extinguished the debt created by the first contract; and (2) Chrysler caused the issuance of a title to the truck delivered to the debtor in May.

The Bankruptcy Code defines new value for preference purposes as "money or money's worth in goods, services, or new credit ... or release ... of property." 11 U.S.C. § 547(a)(2). If satisfaction of an antecedent debt is "new value", the defense in § 547(c)(1) swallows the offense in § 547(b). That Chrysler participated in a metaphorical return of the debtor's truck in July in satisfaction of the debt that arose in May cannot be "new value." A transfer of property to extinguish an antecedent debt is the essence of a preference, not the essence of a preference defense.

Chrysler's second "new value" argument rests on a misinterpretation of *Waldschmidt v. Mid–State Homes, Inc. (In re Pitman)*, 843 F.2d 235 (6th Cir.1988). In *Pitman,* the Sixth Circuit refused a trustee's preference action where a buyer and seller of real property spread the exchanging of documents and the recording of instruments over several months. The Sixth Circuit found that the exchange of a mortgage for good title, although recorded a month after acceptance of a sales contract, was a mutually dependent step in the same transaction that was protected from preference attack.

In this adversary proceeding, creation and perfection of a security interest in the truck delivered to the debtor was intended on May 5, 1993. That intent was defeated because the paperwork was bungled. No additional conveyance by the car dealer or the debtor was either required or contemplated on May 5, 1993. The dealer's obligation to provide good title to the truck arose at the time of contract in May of 1993. Performance of that obligation in July cannot be "new value" for purposes of *Pitman.*

### · IV

This outcome is no more harsh than is typical in preference litigation. Efforts by creditors to repair defective security interests during the 90 days before bankruptcy are routinely disrupted by § 547. *See Markie v. Phillips (In re Phillips),* 24 B.R. 712 (Bankr.E.D.Cal.1982) (security interest perfected within four days of bankruptcy is avoidable preference); *Brown v. Callaway Bank (In re Meritt),* 7 B.R. 876 (Bankr. W.D.Mo.1980) (security interest perfected nine months after it was granted and within 90 days of bankruptcy petition is avoidable); *Still v. Murfreesboro Prod. Credit Ass'n (In re Butler),* 3 B.R. 182 (Bankr.E.D.Tenn.1980) (perfection of security interest in bulldozer 18 days before bankruptcy petition is preferential transfer); *Weill v. Tennessee Central Credit Union (In re Kelley),* 3 B.R. 651 (Bankr.E.D.Tenn.1980) (perfection of security interest in van within 90 days of petition is preferential transfer); *Butz v. Pingel (In re Pingel),* 17 B.R. 236 (Bankr.S.D.Ohio 1982) (perfection one year after transfer and nine days prior to bankruptcy is avoidable preference).

The preference statute has two purposes: it discourages creditors from dismembering the debtor during the slide into bankruptcy; it insures "equality of distribution" among similarly situated creditors. H.R.Rep. No. 595, 95th Cong., 2nd Sess. 177–79 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5787, 6137–6139.

Ninety days prior to this bankruptcy, Chrysler had not perfected its security interest in the truck and no other creditor had

---

5. 11 U.S.C. § 547(c)(1) provides:
   (c) The trustee may not avoid under this section a transfer—
   (1) to the extent that such transfer was
   (A) intended by the debtor and the creditor to or for whose benefit such transfer was made

to be a contemporaneous exchange for new value given to the debtor; and
   (B) in fact a substantially contemporaneous exchange.

established lien rights in the truck. The race for priority in the truck was still in progress.

Section 547 stopped the race 90 days before bankruptcy. Unknown to Chrysler at the time, Congress declared the estate the winner. Chrysler kept running. Section 547 prohibits Chrysler to improve its position on the eve of bankruptcy.