### In re Deborah Lou BANGERT, p/d/b/a/ Oakie Dokies' Casino and Grill, Debtor.

### Joseph V. WOMACK, Trustee, Plaintiff,

### v.

### Jack HOUK and Linda Houk, Defendants.

### Bankruptcy No. 96–12058–7. Adversary No. 97/00035.

United States Bankruptcy Court, D. Montana, Butte Division.

March 11, 1998.

---

## ORDER

JOHN L. PETERSON, Chief Judge.

In this adversary proceeding, the Plaintiff Joseph V. Womack, Trustee in the underlying Chapter 7 bankruptcy case, seeks avoidance of two transfers of property under the alternative theories of preferences under 11 U.S.C. § 547, or as fraudulent transfers under 11 U.S.C. § 548(a)(2). The Defendants, judgment creditors Jack Houk and Lucilla Houk (together the "Houks") oppose the Trustee's claims. This matter was submitted on stipulated facts and memoranda of law which have been reviewed by the Court. This matter is ripe for decision.

## I. STIPULATED FACTS

The parties filed the following stipulated facts on October 16, 1997:

1. Debtor filed a voluntary Chapter 7 bankruptcy petition on October 1, 1996.

2. The Plaintiff is the duly qualified and acting Trustee in this case.

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

4. On December 19, 1994, the Debtor, Deborah L. Bangert ("Bangert") obtained a divorce from her then-husband, Richard D. Mack ("Mack"). Pursuant to the Decree of Dissolution of Marriage (the "Decree"), which incorporated by reference a Marital and Property Settlement Agreement ("PSA"), Bangert and Mack were to retain joint tenancy ownership of real property located in Missoula County, Montana, consisting of real property and triplex located at 1120, 1120A and 1122 Whitaker Drive, Missoula, Montana (the "Missoula real property"). Upon sale of the property, the net proceeds were to be divided equally between Bangert and Mack. (Exhibit A).

5. The Decree also provided that the stock account with Dean Witter would remain as joint property for a period of 24 months. At the end of the 24 month period, the stock was to be sold or equally divided between Bangert and Mack, provided, however that Mack would receive the first $40,000.00 of the stock value or cash proceeds before the remaining balance was equally divided. The value of the stock account was $82,075.00 in October of 1994.

6. The Decree provided for Mack to pay Bangert $10,800.00 in 18 equal monthly installments of $600.00 per month commencing on the 1st day of September, 1994 through February 1, 1996.

7. Mack failed to make the $600.00 payments as required under the Decree (Exhibit B), and Bangert asked the District Court to enforce the terms of the Decree by Motion for and Order to Show Cause.

8. In March of 1996, Bangert and Mack settled their post-divorce property disputes after a court-mandated settlement conference. As part of that agreement Mack agreed to pay Bangert $55,000.00 for her interest in the triplex, and Bangert agreed to transfer her interest in the triplex to Mack by quitclaim deed. Further, Mack agreed to transfer to Bangert one-half of the Dean Witter account in excess of $40,000.00. A Settlement Agreement was prepared and signed by Bangert on March 27, 1996. Mack did not sign the agreement until May 7, 1996, which was the date of the agreement. (Exhibit C).

9. On March 20, 1996, Defendants Jack and Lucilla Houk obtained a judgment against Bangert in Cause No. DV–95–11737 in the Fifth Judicial District Court, Beaverhead County, in the amount of $30,430.95. (Exhibit D).

10. On March 20, 1996, Houk's attorney sent a Writ of Execution and Notice of Levy to the Yellowstone County Sheriff to execute upon the Dean Witter account held in joint tenancy by Bangert and Mack. Pursuant to the Writ, the Sheriff seized $17.32. (Exhibit E).

11. On March 20, 1996, Houk's attorney mailed a transcript of the Beaverhead County judgment to the Clerk of the District Court in Missoula County. (Exhibit F).

12. The Transcript of Judgment from Beaverhead County was filed in Missoula County on March 21, 1996.

13. As of March 21, 1996, Bangert and Mack owned real estate in Missoula County, Montana, as joint tenants, previously described as the Missoula real property and triplex. (Exhibit G).

14. By quitclaim deed dated March 27, 1996, Bangert quitclaimed the Missoula County triplex to Mack, but the judgment lien filed on behalf of Houks on March 21 in Missoula County had already attached to the real estate. (Exhibit H).

15. Thereafter, the attorneys for Houks, William A. Hritsco, for Bangert, John R. Velk, and for Mack, Michael Alterowitz, entered into negotiations to resolve issues relating to the divorce settlement and Houks'

judgment lien which had attached to the Missoula real property.

16. As a result of those negotiations, the parties agreed on June 12, 1996, to the following:

a) Stock held by Bangert and Mack, which was to be transferred to Bangert as part of the divorce settlement, would be transferred to an account to be set up in Bangert's name, c/o her attorney, John R. Velk, at D.A. Davidson in Great Falls;

b) Bangert agreed to liquidate the stocks upon their delivery to D.A. Davidson and use the proceeds to satisfy the Houks' judgment;

c) Upon receipt of the proceeds, the Houks would file a satisfaction of judgment, thereby extinguishing the judgment lien in Missoula County;

d) After this transfer and liquidation, Mack would pay the Houks the remaining money necessary to satisfy the judgment as an additional payment on his obligation to Bangert. (Exhibits I and J).

17. A Writ of Execution dated June 17, 1996, was sent to the Cascade County Sheriff, and a Notice of Levy was sent to D.A. Davidson in Great Falls. (Exhibit K).

18. The Writ was served by the Cascade County Sheriff on June 21, 1996, but was returned with no proceeds, as the stock transfer to the Bangert account at D.A. Davidson had not been completed. (Exhibit L).

19. A new Writ of Execution was sent to the Cascade County Sheriff on July 19, 1996, and a Notice of Levy was sent to D.A. Davidson that same date. (Exhibit M).

20. The levy on Bangert's D.A. Davison account was carried out on July 31, 1996. The levy resulted in a payment in the amount of $23,010.05 made by the Sheriff to the Houks on August 12, 1996. (Exhibit N).

21. At the time of the transfer of $23,026.80 from Bangert's D.A. Davidson account #11648385 to Houks pursuant to the Writ of Execution carried out by the Cascade County Sheriff on July 31, 1996, Bangert's debts exceeded the value of her property and, as such, Bangert was insolvent.

22. Mack tendered the remaining amount of money necessary to satisfy the judgment, $8,520.70 to Houks' attorney by letter dated August 6, 1996. (Exhibit O).

23. After Mack's check cleared, Houks' attorney filed a Satisfaction of Judgment dated August 22, 1996. (Exhibit P).

24. On August 23, 1996, the Missoula County Clerk of Court entered the Satisfaction of the Beaverhead County Judgment, and the judgment lien on the Missoula County property was thereby released. (Exhibit Q).

25. At the time of the transfer of the $8,520.70 from Mack to Houks on August 6, 1996, Bangert's debts exceeded the value of her property and as such, Bangert was insolvent.

26. On October 1, 1996, Bangert filed a Chapter 7 petition in bankruptcy.

27. The effect of the transfer of the $23,026.80 to Houks enabled Houks to receive more than they would receive if the case were a case under Chapter 7 of the Bankruptcy Code, if the transfer had not been made, and if Houks received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

28. The effect of the transfer of the $8,520.70 to Houks enabled Houks to receive more than they would receive if the case were a case under Chapter 7 of the Bankruptcy Code, if the transfer had not been made, and if Houks received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

29. Within one year prior to the commencement of this case, Bangert voluntarily or involuntarily transferred to the Houks the total sum of $31,547.50.

## II. CONTENTIONS OF THE PARTIES

The Trustee contends that the two transfers to Houks totaling $31,547.50 constitute preferences avoidable under 11 U.S.C. § 547(b); and also constitute fraudulent transfers avoidable under 11 U.S.C. § 548 [1].

1. Because Judgment is entered in the Trustee's favor based upon a § 547(b) preference, the Court need not address the Trustee's fraudulent

Houks contend that the satisfaction of judgment and release of judgment lien they gave in return for the payment of $31,547.50 satisfy the requirements for the "contemporaneous exchange for new value" exception under 11 U.S.C. § 547(c)(1). Houks contend that the transfers from Mack to Houks relate back to the date of the judgment lien against the Missoula real property, March 21, 1996, which is outside the 90–day preference period of § 547(b)(4)(A), under the holding of *Drummond v. C.D. Oil Company (In re Murdock)*, 12 Mont.B.R. 401 (Bankr.Mont. 1993). Houks further contend that Mack had a right of setoff under 11 U.S.C. § 553 due to a debt Bangert owed Mack. In addition, Houks contend that the public policy of the State of Montana favoring settlement and avoiding unnecessary litigation supports judgment dismissing the Trustee's claims. Last, Houks contend that the Trustee's fraudulent transfer claim fails because Bangert received reasonably equivalent value from Houks in the form of the satisfaction of judgment and release of judgment lien.

## III. DISCUSSION

### A. Preferences under § 547(b).

■ The Plaintiff as Trustee has the burden of proving the avoidability of transfers under § 547(b). 11 U.S.C. § 547(g). This Court construed Section 547(b) in *Murdock*, 12 Mont.B.R. at 404:

The Ninth Circuit recently wrote the following summary of preferences under 11 U.S.C. § 547(b):

The Bankruptcy Code permits a trustee to avoid any pre-bankruptcy transfer of a debtor's assets if the transfer: 1) is to or for the benefit of a creditor; 2) is for an antecedent debt owed by the debtor before the transfer; 3) is made while the debtor was insolvent; 4) is made within 90 days of the bankruptcy filing; and 5) enables the creditor to receive more than such creditor would have if the debtor liquidated and distributed the es-

transfer claim under § 548, or Houks' defenses thereto.

tate to all creditors. 11 U.S.C. § 547(b)(1–5).

*In re Food Catering & Housing, Inc.*, 971 F.2d 396, 397 (9th Cir.1992).

*See, also In re Powerine Oil Co.*, 59 F.3d 969, 972–3 (9th Cir.1995).

■ Based upon the stipulated facts set forth above, there is no serious question that the two transfers totaling $31,547.50 from Mack and from Bangert's D.A. Davidson stock account were transfers to or for the benefit of the Houks, and that the Houks were creditors of Bangert. Section 101(54) adopts an expansive definition of transfer which includes "every mode . . ., voluntary or involuntary, . . . of disposing of or parting with property or with an interest in property". *Murdock*, 12 Mont.B.R. at 407; *Barnhill v. Johnson*, 503 U.S. 393, 397, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). The levy on Bangert's D.A. Davidson stock account upon execution of a judgment falls within the broad definition of involuntary transfer under § 101(54). *Murdock*, 12 Mont.B.R. at 407 (*quoting Barnhill* ). The stipulated facts state that the Houks subsequently received the $31,547.50. Stip. Facts 20, 21, 22, 23.

As a result of Houks' judgment against Bangert entered March 20, 1996, and recorded in Missoula County on March 21, 1996, the Houks were unquestionably creditors of Bangert. Stip. Facts 9, 10, 11, 12. The stipulated facts show there is no dispute that the transfers were for or on account of an antecedent debt owed by Bangert (based upon the judgment) to Houks before the transfers were made. The Houks attempted to levy on execution of the judgment even after they negotiated a settlement with Bangert and Mack. Stip. Facts 9, 15 through 24. Houks stipulated that Bangert was insolvent at the time of both transfers. Stip. Facts 21 & 25. Thus, the Plaintiff has satisfied his burden under § 547(g) of proving avoidability of the transfers under subsections (1), (2), and (3) of § 547(b). Stipulated Facts 27 and 28 satisfy the Trustee's burden under § 547(g) of proving avoidability of the transfers under subsection (5) of § 547(b) with respect to both transfers.

■ Before addressing subsection (4), the Court finds that the two transfers totaling $31,547.50 were transfers "of an interest of the debtor in property" which are avoidable under § 547(b). Bangert did not have personal physical control of any of the $31,547.50 before that sum was transferred to the Houks by levy on execution of judgment and by Mack. Nevertheless, for purposes of §§ 541 & 547(b), Bangert and her bankruptcy estate had an interest in the $31,547.50 which was transferred.

Section 541(a)(1) of the Bankruptcy Code is intended to include in the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." *In re Campbell (Balyeat Law Offices v. Campbell)*, 14 Mont.B.R. 132, 140–41 (9th Cir. BAP 1995). In *Campbell* the BAP wrote:

The legislative history indicates that the scope of § 541(a)(1) is broad. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). *Section 541(a)(1) is intended to include in the estate any property made available to the estate by any other provisions of the Bankruptcy Code. Id. (citing H.R.Rep. No. 95–595, p. 367 (1977)). Several provisions in the Code permit the trustee to recover property in which the debtor did not have a possessory interest when the bankruptcy petition was filed. See, e.g.,* 11 U.S.C. §§ 543, 544, 547 & 548; *Whiting Pools,* 462 U.S. at 205, 103 S.Ct. 2309. Thus, "[a]n estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, *as well as those interests recovered or recoverable through transfer and lien avoidance provisions."* *Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).

Generally, state law determines the extent of these interests and when these interests expire. *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 244 (9th Cir.1988); *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir.1986). "State law, however, must be applied in a manner consistent with federal bankruptcy law." *In re Sierra Steel, Inc.*, 96

B.R. 271, 273 (9th Cir. BAP 1989) (*citing In re North Am. Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir.1985), *amended*, 774 F.2d 1390 (9th Cir.1985), *cert. denied sub nom. Daniel A. Torres, M.D., P.C. v. Eastlick*, 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986)). 14 Mont.B.R. at 141–42.

*In re Weatherwax*, 16 Mont.B.R. 304, 308–09 (Bankr.Mont.1997) (emphasis added).

Bangert had rights pursuant to a valid Montana divorce decree and PSA (Exhibit A) in the Missoula real property and later $55,000 in proceeds therefrom (Exhibit C), and in half of all stock proceeds in the Dean Witter account in excess of $40,000. Stip. Fact 8. Mack had also failed to pay Bangert $10,800 called for under Exhibit A. Therefore, Bangert had valid enforceable rights under Montana State law to these receivables owed by Mack, and those interests were interests of the Debtor's estate in property which Mack delivered to Bangert's stock account and then to Houks in the total amount of $31,547.50. *Weatherwax*, 16 Mont.B.R. at 308–09.

In fact, while the record is not entirely clear, it is sufficient to draw the inference that Mack managed to satisfy his obligations to Bangert from the divorce decree at a discount [2], taking advantage of the financial pressure Bangert was under as a result of the Houks' judgment against her and Mack's failure to perform his obligations under the PSA and Exhibit C. In any event, the Court finds that the entire $31,547.50 constituted interests of the Debtor in property for purposes of § 547(b).

**B. Relation Back Under § 547(b)(4).**

█ Houks' main argument is that the payments they received relate back to the date of their judgment against Bangert which was perfected more than 90 days before the petition date. Houks contend that while the transfers of funds were each within the 90–day preference period, their judgment lien was perfected on the date they docketed their judgment in Missoula County, March 21, 1996. Therefore, Houks contend, the date of actual payment and the fact that funds rather than real property was transferred are irrelevant because they simply agreed to substitute their Missoula real property collateral with the $31,547.50.

Houks cite a 1926 case, *Roberts v. Yegen*, 12 F.2d 654, 656 (9th Cir.1926) for their argument that Houks simply agreed to a substitution of their collateral by agreeing to execute on the stock account rather than foreclosing on a judgment lien. However, *Roberts v. Yegen* does not stand for the proposition that substitution of collateral is a defense to a preference action. In *Roberts v. Yegen* certain creditors sought an adjudication of the Yegens as involuntary bankrupts. The district court dismissed the involuntary bankruptcy petition because the petitioners failed to prove insolvency, and the Ninth Circuit affirmed. 12 F.2d at 654, 657. The passage cited by Houks involves the substitution of $48,000 in cash and securities by Yegens to a Chicago bank in return for release of Anaconda bank stock held by the Chicago bank as collateral to the Yegens. 12 F.2d at 656. The value of the bank stock received by the trustee was far in excess of the cash and securities exchanged. *Id.* In the end the court affirmed dismissal of the involuntary bankruptcy because the petitioning creditors failed to prove insolvency. 12 F.2d at 657. Much has changed since 1926 in the area of preference law, and *Roberts v. Yegen* does not stand for the proposition for which Houks cite it.

Houks contend that their judgment lien attached to the Missoula real property outside the 90–day preference period, and that their execution against Bangert's stock account relates back to the date of judgment. Pursuant to Mont.Code Ann. §§ 25-9-301(a)(2) and 302(1), Houks obtained a judgment lien on the Missoula real property of the judgment debtor Bangert as of March 21, 1996. However, no such lien existed on any of Bangert's personal property until levy upon execution of the judgment, and the Court is not persuaded that this absence of

---

**2.** In return for $31,547.50 paid to Houks, assuming the $23,026.80 stock proceeds remains constant, Mack discounted his obligations to Bangert in Exhibit C by at least $1,479.30, the difference between the $10,000 owed (Exhibit I p. 3) and the $8,520.70 actually paid.

lien can be finessed, as Houks contend, by merely substituting collateral.

In *Murdock*, 12 Mont.B.R. at 406–07, this Court extensively quoted the United States Supreme Court in determining whether execution of a judgment constituted a preference:

The United States Supreme Court recently addressed the same sections at issue here in *Barnhill v. Johnson*, 503 U.S. [393, 396–98], 112 S.Ct. 1386, 1388–89, 118 L.Ed.2d 39 (1992):

In relevant part, § 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

\* \* \* \* \* \*

(4) made—

(A) on or within 90 days before the date of the filing of the petition . . . .

Title 11 U.S.C. § 101(54) (1988 ed., Supp. II) defines "transfer" to mean

"every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

Section 547(e) provides further guidance on the meaning and dating of a transfer. For purposes of § 547, it provides

[ (e)(1) ](B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days . . . .

Our task, then, is to determine whether, under the definition of transfer provided by § 101(54), and supplemented by § 547(e), the transfer that the trustee

seeks to avoid can be said to have occurred before November 20.

"What constitutes a transfer and when it is complete" is a matter of federal law. *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–370, 65 S.Ct. 405, 89 L.Ed. 305 (1945). This is unsurprising since, as noted above, the statute itself provides a definition of "transfer." But that definition in turn includes references to parting with "property and interest in property." In the absence of any controlling federal law, "property" and "interests in property" are creatures of state law. *Id.*, at 370, 65 S.Ct. 405; *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law"). Thus it is helpful to sketch briefly the rights and duties enjoyed under state law by each party to a check transaction.

\* \* \* \* \* \*

Since § 101(54) includes both voluntary and involuntary transfers, the fixing of a judicial lien on a debtor's property may constitute a preference if the other § 547(b) requirements are met. 4 *Collier on Bankruptcy*, ¶ 547.03[A] (15th ed.1993). *Collier* writes:

When personal property [as here] is involved, it is almost the universal rule that a mere entry of judgment does not create a lien. In such cases, it is only the enforcement of the judgment that can possibly give rise to a preference. Thus, depending upon the law of the particular state, the issuance of the execution (that is, delivery of the writ to the proper officer), or the actual levy of the execution, is required.

In *Murdock* this Court concluded that, by reference to Montana attachment and execution statutes, an acknowledgment of execution resulted in accrual of a judgment lien and relation back of a perfection date of the eventual levy on auction proceeds outside of the 90–day preference period. 12 Mont.B.R. at 410, 416. In the instant case there was no acknowledgment of execution prior to the 90–day preference period as in *Murdock*. Here,

there were no funds in Bangert's D.A. Davidson stock account when Houks first attempted to levy on execution of their judgment. Stip. Fact 18. On June 21, 1996, there simply were no funds to attach to. Exhibit L. The levy on Bangert's stock account did not take place until July 31, 1996. Until that date of levy, Houks had not done all the acts required to perfect their interest. July 31, 1996, is within the 90–day preference period of the October 1, 1996, petition date.

Houks' relation back argument is further weakened by the recent United States Supreme Court decision in *Fidelity Financial Services, Inc. v. Fink*, 522 U.S. 211, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998). Rejecting a creditor's relation back argument based upon state law, the Court wrote "the terms of § 547(e)(1)(B) apparently imply that a transfer is 'perfected' only when the secured party has done all the acts required to perfect its interest, not at the moment as of which state law may retroactively deem that perfection effective." —— U.S. at ——, 118 S.Ct. at 654. Construing the limitations of the trustee's avoidance powers under § 546 and the "pointed" omission of § 547 therefrom, the Court wrote "it is hard to resist the implication that Congress quite specifically intended a trustee's power to avoid pre-petition preferences to prevail over any state rules permitting relation back." —— U.S. at ——, 118 S.Ct. at 654; *see also In re Williams*, 216 B.R. 447 (Bankr.D.Kan.1998) (*citing Fidelity Financial Services, Inc. v. Fink*).

Given that language, the holding of *Murdock* allowing the relation back of the judicial lien to the date of acknowledgment of execution may no longer be good law. Even if it were good law, Houks had no corresponding acknowledgment of execution on which to relate back and would therefore not prevail even under the rule of *Murdock*. Certainly Houks' relation back argument cannot be accepted under the holding of *Fidelity Financial Services, Inc. v. Fink.*

### C. Contemporaneous Exchange Exception— § 547(c)(1).

Houcks assert that the exception of § 547(c)(1) exchange applies. Section 547(c)(1) provides that the Trustee may not

avoid a transfer "to the extent that such transfer was intended by the debtor and creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) was in fact a substantially contemporaneous exchange."

Houks contend that new value was given to Bangert in the form of Mack's release of his claims against Bangert under their settlement, and Houks' release of their judgment lien against Bangert's property. As discussed above, however, Houks' never had a valid judgment lien outside the preference period against any of Bangert's personal property.

■ The purpose of the § 547(c) exceptions is to encourage creditors to continue to deal with troubled creditors on normal business terms by obviating any fear that they will have to disgorge transfers received for present value given. *Barnhill*, 503 U.S. at 395, 112 S.Ct. 1386; *In re Lee*, 108 F.3d 239, 241 (9th Cir.1997). Houks and Bangert did not have a normal business relationship. Houks were judgment creditors of Bangert, and thus would not appear to fit within the purpose of the § 547(c)(1) exception.

■ It is true that release of a security interest may fall within § 547(c)(1). *In re E.R. Fegert, Inc.*, 887 F.2d 955, 959 (9th Cir.1989). It is significant, however, that the value of the debtor's estate not be diminished by the transfers. *Id.* In this case the value of the estate was diminished by $31,547.50 in return for nothing more than a satisfaction of Houks' judgment and satisfaction of Mack's dubious contract claims.

■ Furthermore, forbearance from exercising pre-existing rights does not constitute new value under § 547(a)(2). *In re Maxwell Newspapers, Inc.*, 192 B.R. 633, 637 (Bankr.S.D.N.Y.1996). "A transfer of property to extinguish an antecedent debt is the essence of a preference, not the essence of a preference defense." *Id.(quoting In re Messenger*, 166 B.R. 631, 636 (Bankr.M.D.Tenn. 1994)). As the *Messenger* court put it: "If satisfaction of an antecedent debt is "new value", the defense in § 547(c)(1) swallows the offense in § 547(b)." 166 B.R. at 636. This Court declines to read § 547(c)(1) in

such a manner. Houks' satisfaction of judgment was not new value.

Neither was Houks' release of their judgment lien. At the time they released the judgment lien in August of 1997, Bangert had already quitclaimed her interest in the Missoula real property to Mack on March 27, 1996 (Exhibit H). Therefore, Houks' release of judgment lien had no new value to Bangert for purposes of § 547(a)(2).

As discussed above, Houks' had no valid judgment lien against Bangert's personal property outside of the 90–day preference period. The only lien accruing on the docketing of the judgment on March 20, 1996, was a lien on any of Bangert's Beaverhead County real property. § 25–9–301(a).

■ On March 21, 1996, the lien attached to the Missoula real property. § 25–9–302(a). There was no attachment against the stock proceeds until within the preference period when the levy took place against Bangert's D.A. Davidson stock account on July 31, 1996. *Murdock,* 12 Mont.B.R. at 413, 415. Before that there were no funds in Bangert's stock account to which the levy could attach, Exhibit L, and thus there could be no relation back. Whatever lien Houks had against the proceeds in Bangert's stock account was voidable by the Trustee as a preference under § 547(b). Being "voidable by the ... trustee", the release of lien is not new value. § 547(a)(2).

Houks cite *In re George Rodman, Inc.,* 792 F.2d 125, 127 (10th Cir.1986), which held that the release of a lien in exchange for a debtor's payment represented a contemporaneous exchange for new value. Houks contend that when they released their judgment lien Bangert received new value and the § 547(c) exception applies. However, there was no unavoidable judgment lien on any of the $31,-547.50 transferred, not even on the $23,-026.80 in Bangert's D.A. Davidson stock account levied upon, because the levy did not take place outside the 90–day preference period. At the time Houks released their judgment lien on the Missoula real property in August 1997, almost six months had passed since Bangert quitclaimed the Missoula property to Mack. There is no showing that the

release of the judgment lien had any new value to Bangert at the time of the transfers.

The Ninth Circuit recognized that the holding in *Rodman* has been narrowed in *In Re Grand Chevrolet, Inc.,* 25 F.3d 728, 733 (9th Cir.1994):

The holding in *Rodman* has been narrowed by the Tenth Circuit in *In re Robinson Bros. Drilling,* 877 F.2d 32 (10th Cir. 1989), and we have adopted our own approach to determine the value of a released lien under § 547(c)(1). In *In re Nucorp Energy,* 902 F.2d 729, 733 (9th Cir.1990), we held that "a court must measure the value given to the debtor in determining the extent to which the trustee may void a contemporaneous exchange." *See also In re Spada,* 903 F.2d 971, 977 (3d Cir.1990) (holding that party seeking shelter of § 547(c)(1) must "prove the specific measure of the new value given to the debtor in the exchange"); *In re Arrow Air,* 940 F.2d 1463 (11 Cir.1991). Value should be measured at the time of the transfer *In re Nucorp Energy,* 902 F.2d at 733; *In re Robinson Bros. Drilling,* 877 F.2d at 33.

Applying the above law and placing the burden of proof under § 547(c)(1) on the Houks, § 547(g), the Court finds that Houks have failed to satisfy their burden of showing contemporaneous exchange of new value was given to the Debtor in return for the $31,-547.50. The release of Houks' judgment lien had no new value to Bangert at the time of the transfer in August of 1996 because she quitclaimed all right to the real property to Mack in March (Exhibit H), and thus had no value whatsoever in the real property. The only other new value contended by Houks is the satisfaction of judgment, and Mack's potential cause of action against Bangert for breach of contract or failure to consideration.

■ The burden of proving the specific measure of the new value is on the party seeking the § 547(c)(1) shelter. *Grand Chevrolet,* 25 F.3d at 733; *Spada,* 903 F.2d at 977. Houks failed to show any measure of new value given to the debtor in exchange for the $31,547 .50 at the time of the transfers in July and August of 1996. There is absolutely no evidence in the record of the value of Mack's lawsuit for breach of contract

or failure to consideration which Houks contend constituted new value. At the time of the transfers, this Court deems there was no new value, as defined under § 547(a)(2), to any potential claim of Mack against Bangert.

As one bankruptcy court wrote: "When a creditor threatens to exercise a legal remedy against a debtor, and in exchange for not so doing extracts a payment for antecedent debt, nothing of value has accrued to the debtor estate to compensate other creditors for the loss of that payment.... Such a transaction falls squarely within the ambit of the preference law, rather than within its exceptions." *In re Maxwell Newspapers,* 192 B.R. at 637 (citing *Messenger*).

As stated, Bangert quitclaimed the Missoula property to Mack in March 1996 (Exhibit H). Thus, Mack had no viable breach of contract claim against the Debtor at the time of the $31,547.50 was transferred to Houks. If anything, this record shows Bangert had claims against Mack for nonperformance under every agreement since the PSA. Stip. Facts 5, 6, 7, 8; Exhibits A, B, C, I.

Even if such Mack were shown to have viable claims against Bangert, Houks failed their burden of showing any value for Mack's claims against Bangert at the time the $31,547.50 was transferred to Houks. *Grand Chevrolet,* 25 F.3d at 733; *Spada,* 903 F.2d at 977. Furthermore, whatever value Mack's claims against Bangert may have had suffers from the same defect as Houks' satisfaction of judgment, i.e., both are antecedent debts, the satisfaction of which do not constitute new value under §§ 547(a)(2) or (c)(1). *Messenger.* In sum, Houks have failed their burden of showing nonavoidability of the transfers of $31,547.50 under § 547(c)(1). 547(g).

### D. Mack's Setoff Rights under 11 U.S.C. § 553.

Houks contend that because Mack had a right of setoff of Bangert's obligations to Mack, the transfers to Houks of $31,547.50 should not be avoided as transfers. Houks' briefs cite no case law construing § 553 or how it applies to these facts. The Court finds that Houks' setoff argument is without merit.

■ First, Mack is not a party to this proceeding. Houks fail to explain how they have standing to assert Mack's setoff rights, if any. Mack was not a party to Houks' judgment against Bangert, and he had no personal liability to Houks. Stipulated facts 7, 8, 14 and 16 and Exhibits A, C, H and I show that Bangert fully performed her obligations to Mack, while Mack consistently failed to perform his obligations to Bangert. Thus even if § 553 applied, the Court finds that there is no mutuality of debt between Mack and Bangert which would make § 553 applicable.

The right of setoff under § 553 allows entities that owe each other money to apply their mutual debts against each other, thus avoiding "the absurdity of making A pay B when B owes A." *Newbery Corp. v. Fireman's Fund Ins.,* 95 F.3d 1392, 1398 (9th Cir.1996) (*quoting Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995)).

■ To establish the right to a setoff a creditor must establish mutual debts between the debtor and the creditor. *In re Lincoln,* 11 Mont. B.R. 230, 234 (Bankr. Mont.1992). The Ninth Circuit standard for determining mutuality of debt requires: (1) the debts must be in the same right; (2) the debts must be between the same individuals; and (3) those same individuals must stand in the same capacity. *In re County of Orange,* 183 B.R. 609, 616 (Bankr.C.D.Cal.1995); *In re Visiting Home Services, Inc.,* 643 F.2d 1356, 1360 (9th Cir.1981). The mutuality requirement is strictly construed in the exercise of the bankruptcy court's discretion under general principles of equity, and the burden of proving an enforceable right of setoff rests with the party asserting the right. *Newbery Corp. v. Fireman's Fund Ins. Co.,* 95 F.3d 1392, 1399 (9th Cir.1996) (*quoting In re County of Orange,* 183 B.R. at 615).

Applying these standards to the instant case, Houks' setoff argument fails simply because Houks owed no debt to Bangert. Neither did Houks owe a debt to Mack.

Neither did Mack owe a debt personally to Houks[3], although Houks had a valid judgment lien *in rem* against the Missoula real property owned entirely by Mack after Bangert quitclaimed her interest to him by Exhibit H. Finally, Bangert did not owe a debt to Mack, although Mack owed a debt to Bangert at the time of the transfer. The Houks failed their burden of showing they owed a mutual debt, under the strict construction of that term, to Bangert to persuade this Court to exercise its equitable discretion and allow a setoff.

Houks' setoff argument is based solely on an unliquidated breach of contract claim they allege Mack has against Bangert, and the *in rem* liability of the Missoula real property for Houks' judgment lien. Neither of these are debts owed by Houks. Mack was not personally liable to Houks as a result of the judgment. Bangert owed no debt to Mack under a breach of contract claim at the time of the transfer. Bangert fully performed her obligations to Mack, while Mack's consistent failure to performance of his obligations to Bangert under the PSA as shown by Exhibits B, C, and I remind this Court of the maxim that he who seeks equity must do equity. *In re Corey,* 892 F.2d 829, 838 (9th Cir.1989). Since Houks rely on Mack's asserted claims for an equitable remedy, they must suffer from his failure to perform as well.

■ Even where there is mutuality of debt, a bankruptcy court may disallow an otherwise proper § 553 setoff if there are compelling reasons for not allowing such a preference. *In re NWFX, Inc.,* 864 F.2d 593, 595–96 (8th Cir.1989). The instant case provides compelling reasons for not allowing the setoff due to Mack's failure of performance. Houks' setoff argument is an attempt at "triangular setoff" where a creditor attempts to set off its debt to the debtor with the latter's debt to a third party, which is not permitted under § 553 even if Houks did owe a debt to Bangert. *Matter of United Sciences of America, Inc.,* 893 F.2d 720, 723 (5th Cir.1990); *See In Matter of Elcona Homes*

*Corp.,* 863 F.2d 483, 486 (7th Cir.1988); 5 Lawrence P. King *Collier on Bankruptcy* ¶ 553.03[3][b][i] (1997). In short, Houks failed to show mutuality of debt, and their setoff argument fails.

**E. Policy.**

■ Houks contend that the state law public policy of favoring settlement and avoiding unnecessary litigation should compel this Court to enter judgment in their favor. They argue that otherwise the public policy would not be adhered to and would require creditors to foreclose on their liens.

In this case state public policy must yield to the policies of the Bankruptcy Code and the purposes of the preference statute: It discourages creditors from dismembering the debtor during the slide into bankruptcy; and it facilitates the prime bankruptcy policy of equality of distribution among creditors of the debtor. *In re Messenger,* 166 B.R. at 636; 5 *Collier on Bankruptcy* ¶ 571.01. Since federal law governs preferences, the Montana public policy favoring settlements must yield. The Houks must return the preferential transfers, but will be allowed a general unsecured claim in the amount of their judgment as of the bankruptcy petition date and share equally with the other unsecured creditors.

**IV. CONCLUSION**

The Plaintiff satisfied his burden of showing $31,547.50 in preferential transfers took place within 90 days of the petition date. Houks failed to satisfy their burden of proof under § 547(c)(1) & (g) that the transfers were contemporaneous exchanges for new value, and failed to satisfy their burden of showing mutual debts existed to support a setoff under § 553. Finally, the bankruptcy policies of discouraging creditors from dismembering the debtor during the slide into bankruptcy with the resulting equality of distribution among creditors overrides the state public policy encouraging settlement and avoiding unnecessary foreclosure litigation.

---

**3.** Debt means liability on a claim. 11 U.S.C. § 101(12). Claim means a right to payment. § 101(5)(A).

IT IS ORDERED a separate Judgment shall be entered in this adversary proceeding against Defendants Jack Houk and Lucilla Houk in the amount of $31,547.50 in favor of the Plaintiff Joseph V. Womack, Trustee; and the levy on and transfers in the amounts of $23,026.80 on July 31, 1996, August 12, 1996, and $8,520.70 on August 6, 1996, to the Houks are avoided as preferences under 11 U.S.C. § 547(b).